In re Jeff Benny **ANDERSON**, Debtor.

Sam J. **McALLESTER**, III,
Trustee, Plaintiff,

v.

Norma L. **ALDRIDGE**, et al.,
Defendants.

Bankruptcy No. 181–03033.
Adv. No. 182–0505.

United States District Court,
M.D. Tennessee.

April 4, 1983.

---

Russell H. Hippe, Jr., Nashville, Tenn. and Charles W. Wade, Lewisburg, Tenn., for Frances Hardison and Frank Hardison; Freddie T. Mustain and Judith H. Mustain; and Dorlene Sargent and Roy L. Sargent.

Julie N. Jones, Nashville, Tenn., for Norma L. Aldridge; James M. Jones, Jr., Trustee; and Peoples and Union Bank.

Walter Bussart, Lewisburg, Tenn., for Connie B. Armstrong and Maynard B. Armstrong; Carolyn N. Bingham and James H. Bingham, Jr.; Marvin G. Burrow, Jr. and Salene Burrow; Grover Collins and Peggy P. Collins; Addie W. Harris and L.R. Harris, Jr.; Henry L. Hulshof and Dorothy Y. Hulshof; David Jent and Patricia H. Jent; Ron Klenk; John David Murray and Yolanda Murray; Mike Samford; and Ed E. Smotherman.

Sam J. McAllester, Nashville, Tenn., for trustee.

W. Gary Blackburn, Nashville, Tenn., for Gayle B. Spivey and Peggy G. Spivey.

Roger E. Brandon, Lewisburg, Tenn., Robert Ziegler, Nashville, Tenn., for debtor, Jeff Benny Anderson.

Sylvia Brown, Nashville, Tenn., for Farmers Home Admin.

Douglas Fisher, pro se.

## REPORT AND NOTICE

GEORGE C. PAINE, II, Bankruptcy Judge, Standing Master.

Pursuant to Federal Rule of Civil Procedure 53(e)(1), the Standing Master submits this proposed order or judgment, including any required findings of fact and conclusions of law, to the United States District Court for the Middle District of Tennessee with the recommendation that this proposed order or judgment be approved. Notice is hereby given that all parties in interest have ten days within which to file objections to this Report with the Bankruptcy Court Clerk designated under Administrative Rule No. 28–3 as the Clerk for the United States District Court for the Middle District of Tennessee.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This matter is before the court on the plaintiff's and defendants' cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 as made applicable to bankruptcy proceedings by Bankruptcy Rule 756.[1] Upon consideration of the evidence presented, stipulations, exhibits, briefs of the parties and the entire record, this court concludes that the trustee's motion for summary judgment to avoid the seven transfers of real property at issue pursuant to § 544(a)(1) and (2) should be

1. A brief review of the history of this proceeding is essential to understand its present procedural posture. Several of the defendants have persistently questioned the bankruptcy court's jurisdiction over this proceeding in view of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Northern Pipeline,* the Supreme Court found the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional. Although this opinion was issued on June 28, 1982, the court ultimately stayed its judgment until December 24, 1982. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880; *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 103 S.Ct. 199–200, 74 L.Ed.2d 160 (1982). Prior to December 24, the bankruptcy court denied several of the defendants' motions to dismiss for lack of subject matter jurisdiction on the basis that the Supreme Court's stay permitted the bankruptcy courts to continue to exercise § 241(a) jurisdiction over all cases and proceedings filed during the stay period. *McAllester v. Aldridge (In re Anderson),* Case No. 181–03033, Adv.Proc. No. 182–0505, slip op. at 2 (Bkrtcy.M.D.Tenn. August 26, 1982). *See also Walter E. Heller & Co. v. Matlock Trailer Corp.,* 27 B.R. 318, 326 (M.D. Tenn.1983); *Schneider v. 2-Star Foods, Inc. (In re Cumberland Enterprises, Inc.),* 22 B.R. 626, 631 (Bkrtcy.M.D.Tenn.1982). After the Supreme Court decided not to extend the stay beyond December 24, 1982, *see* 51 U.S.L.W. 2382, this court adopted as Administrative Order No. 28 the "emergency rule" promulgated by the Judicial Conference of the United States which in essence conveyed to the bankruptcy judges for this district the authority to act in bankruptcy cases and proceedings until Congress enacted appropriate remedial legislation in response to the *Northern Pipeline* decision.

Subsequently, a number of defendants once again raised the question of whether the bankruptcy court possessed subject matter jurisdiction over this proceeding. In *Walter E. Heller & Co. v. Matlock Trailer Corp.,* 27 B.R. 311, 10 B.C.D. (CRR) 34 (Bkrtcy.M.D.Tenn.1983), the bankruptcy court in addressing this same issue in another case concluded that it retained subject matter jurisdiction pursuant to § 241(a) to adjudicate any proceeding arising in a case commenced on or before December 24, 1982. This decision was, however, effectively reversed by this court in an opinion written by Chief Judge L. Clure Morton. In response to a motion to dismiss an adversary proceeding initiated in the bankruptcy court on the basis of the *Northern Pipeline* decision, Judge Morton held that "in all cases and proceedings filed pursuant to title 11 of the Code and pending in the court of bankruptcy after the effective date of the Supreme Court decision, the non-Art III bankruptcy judges may not constitutionally exercise any of the jurisdiction or power conferred upon them by the 1978 Act." *Walter E. Heller & Co. v. Matlock Trailer Corp.,* at 326. The court further found that the "emergency rule" represented "little less than an unconstitutional abdication of the judicial function depriving the parties of a determination by this court on the basic issues involved in this litigation." *Id.* at 328. The court then rereferred the *Matlock* bankruptcy case and adversary proceeding to the United States bankruptcy judges for this district pursuant to Federal Rule of Civil Procedure 53. The court appointed the bankruptcy judges special masters under Rule 53 on the basis that exceptional conditions existed which included "the unanticipated unconstitutionality of the grant of power to bankruptcy judges contained in section 241(a) of the Bankruptcy Act of 1978; the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; the availability of specialized expertise necessary for the expeditious handling of bankruptcy matters; and the fact that the bankruptcy judge who initially handled these matters is far more familiar with this litigation than is this court." *Id.* at 328.

This court thereafter revised Administrative Order No. 28 to, among other things, appoint the bankruptcy judges for the Middle District of Tennessee standing masters pursuant to Rule 53(a) "to assist the district court in the administration of cases commenced under Title 11 of the United States Code, and in the disposition of civil proceedings arising under Title 11 or arising in or related to cases under Title 11." *In re Administration of the Bankruptcy System,* Adm.Order No. 28, at 1 (M.D.Tenn. March 1, 1983). Pursuant to Administrative Order No. 28 and the decision in *Heller,* this court referred this proceeding to United States Bankruptcy Judge George C. Paine, II, in his temporary capacity as standing master for this district on March 9, 1983. The proceeding is now before this court for review of the report submitted by the standing master.

granted and the defendants' motion for summary judgment dismissed. The court further finds that the trustee holds these properties in a constructive trust for the benefit of the defendant record titleholders and that these defendants should pay all the trustee's costs incurred in initiating this proceeding, including attorney's fees. Each of these defendants shall bear these costs equally and, once a defendant pays his proportionate share of this amount, the trustee shall convey to this defendant his real property interest as reflected in the public records.

The following shall represent findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The sole issue presented for this court's resolution is whether seven warranty deeds executed by the debtor Jeff Benny Anderson prior to the filing of his bankruptcy petition can be avoided by the trustee pursuant to his powers under 11 U.S.C. § 544(a).[2] Except for the Farmers Home Administration, each of the numerous defendants claims title to various tracts of real property through these deeds (hereinafter these parties will be referred to simply as the "defendants").[3] The trustee alleges that these deeds are defectively acknowledged since each fails to state that the notary acknowledging the deed was "personally acquainted" with the grantor,

the debtor in this case. The trustee thus submits that the deeds are null and void under applicable Tennessee law and can be avoided by him pursuant to § 544(a). After the trustee commenced this proceeding, the defendants rerecorded their deeds to correct the allegedly improper acknowledgements.

Both the trustee and the defendants have submitted cross motions for summary judgment on this issue.[4] The bankruptcy court has previously outlined the prerequisites for the entry of a summary judgment. Such a judgment may only be granted "if, upon consideration of the entire record, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Stewart v. Brewer,* 17 B.R. 186, 188 (Bkrtcy.M.D.Tenn.1982). *See also Bohn Aluminum and Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). This criterion is clearly satisfied in this case since no material facts are disputed and only a question of law remains unresolved.

The trustee seeks to avoid the seven deeds at issue pursuant to 11 U.S.C. § 544(a), commonly known as the "strong arm clause," which vests a trustee at the commencement of a debtor's bankruptcy petition with the state defined rights and powers of a judgment lien creditor of the debtor, an unsatisfied execution creditor of the debtor and a bona fide purchaser of real

---

**2.** The dispute between the trustee and the defendant Farmers Home Administration ("FmHA") has all but been resolved. The trustee alleged in his complaint that any interest he possessed in these properties was superior to the interest of FmHA which, subsequent to obtaining a judgment from the bankruptcy court against the debtor for $181,000.00 plus costs and a declaration that this debt was nondischargeable, filed a judgment lien in the Register's Office for Marshall County, Tennessee, against any and all of the debtor's property. FmHA's post-petition lien is clearly inferior to the trustee's interest in these properties which vested at the time of the filing of the bankruptcy petition. *See* 11 U.S.C.A. § 544(a) (West 1979). FmHA has admitted so much in its answer to the trustee's complaint.

**3.** The court has previously dismissed the trustee's complaint against the attorney who pre-

pared these deeds and the two notaries who acknowledged them. *McAllester v. Aldridge (In re Anderson),* 24 B.R. 640, 642–643 (Bkrtcy. M.D.Tenn.1982).

**4.** The trustee has filed a motion to strike the defendants' motion for summary judgment filed by Walter W. Bussart, Esq. on behalf of his clients on the basis that such motion fails to comply with either Local Rule No. 2–8(b)(2), which prescribes that a memorandum of law accompany the motion, or Local Rule No. 2–8(b)(7)b, which requires the attachment of a separate statement with the motion explaining the material facts relied on by the movant and why the granting of the summary judgment is warranted. The court finds the trustee's motion to strike to be without merit. These defendants submitted a memorandum with this court on October 4, 1982, which fully complies with the requirements of these local rules.

property from the debtor.[5] On the basis of this statute, the trustee now attacks the validity of these seven conveyances of the debtor vis-á-vis his interest as defined in § 544(a).

The court must concur with the trustee's assessment that under Tennessee's registration statutes each of these deeds was defectively acknowledged and therefore null and void as to the debtor's creditors and bona fide purchasers from the debtor without notice. Section 66–22–107 of the Tennessee Code prescribes in detail the correct language to be utilized in a certificate of acknowledgment. Tenn.Code Ann. § 66–22–107 (1982) provides:

> "*Form of certificate of acknowledgment.*—(a) If the acknowledgment be made before a county clerk or deputy, or clerk and master, or notary public, or before any of the officers out of the state who are commissioned or accredited to act at the place where the acknowledgment is taken, and having an official seal, viz: those named in §§ 66–22–103 and 66–22–104, and, also, any consular officer of the United States having an official seal, *such officer shall write upon or annex to the instrument the following certificate,* in which he shall set forth his official capacity:
>
> > State of Tennessee,       )
> > County of _____)
>
> Personally appeared before me, (name of clerk or deputy) clerk (or deputy clerk) of said county, (bargainor's name), the within named bargainor, *with whom I am personally acquainted,* and who acknowledged that he executed the within instru-

ment for the purposes therein contained. Witness my hand, at office, this ____ day of _____, 19____.

> (b) Or, in the alternative, the following certificate, in case of natural persons acting in their own right:
>
> > State of Tennessee,       )
> > County of _____)
>
> On this ____ day of _____, 19____, before me personally appeared _____, *to me known to be the person (or persons) described in and who executed the foregoing instrument,* and acknowledged that he (or they) executed the same as his (or their) free act and deed.
>
> (c) Or, in case of natural persons acting by attorney:
>
> > State of Tennessee       )
> > County of _____)
>
> On this ____ day of _____, 19____, before me personally appeared _____, *to me known to be the person who executed the foregoing instrument* in behalf of _____ acknowledged that he executed the same as the free act and deed of said _____." (emphasis supplied).

The law of Tennessee is well established that the form for a certificate of acknowledgment, which is essential to the valid registration of a deed, must substantially comply with the aforementioned statutory language. The language is prescribed and a probating officer has little if any discretion to vary the form of the certificate. *See, e.g., Kelly v. Calhoun,* 95 U.S. 710, 711–713, 24 L.Ed. 544 (1878); *In the*

---

**5.** 11 U.S.C.A. § 544(a) provides as follows:

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists."

*Matter of Viking Co.,* 389 F.Supp. 1230, 1231–1234 (E.D.Tenn.1974), aff'd 510 F.2d 974 (6th Cir.1975); *In re Englewood Mfg. Co.,* 28 F.Supp. 653, 654–656 (E.D.Tenn. 1939); *Lancaster v. Boatright (In re Grable),* 8 B.R. 363, 364–365 (Bkrtcy.E.D.Tenn. 1980); *Chattanooga Lumber & Coal Corp. v. Phillips,* 202 Tenn. 266, 304 S.W.2d 82, 85–87 (1957); *Pennington v. Webb-Hammock Coal Co.,* 182 Tenn. 33, 184 S.W.2d 47, 48 (1944); *Granger v. Webster,* 162 Tenn. 459, 36 S.W.2d 883, 884 (1931); *Newton Finance Corp. v. Conner,* 161 Tenn. 441, 33 S.W.2d 95, 96–97 (1930); *Figuers v. Fly,* 137 Tenn. 358, 193 S.W. 117, 120–121 (1917); *Henderson v. Ish,* 3 Shannon 84, 84–85 (1879); *Henderson v. McGhee,* 53 Tenn. (6 Heisk.) 55, 57–58 (1871); *Turbeville v. Gibson,* 52 Tenn. (5 Heisk.) 565, 582–583 (1871); *Mullins v. Aiken,* 49 Tenn. (2 Heisk.) 535, 546–547 (1870); *Harrison v. Wade,* 43 Tenn. (3 Cold.) 505, 507–509 (1866); *R.B. Bone & Bro. v. Greenlee,* 41 Tenn. (1 Cold.) 28, 30–31 (1860); *Fall & Cunningham v. Roper,* 40 Tenn. (3 Head) 485, 486 (1859); *Brogan v. Savage,* 37 Tenn. (5 Sneed) 689, 692 (1858); *Johnson v. Walton,* 33 Tenn. (1 Sneed) 257, 259–261 (1853); *Garnett v. Stockton,* 26 Tenn. (7 Hum.) 84, 85–86 (1846); *Peacock v. Tompkins,* 20 Tenn. (1 Hum.) 135, 140 (1839); *American City Bank v. Western Auto Supply Co.,* 631 S.W.2d 410, 423–424 (Tenn.App.1981).

■ If the probating officer does not substantially comply with the statutory form of acknowledgment, the deed is deemed null and void as to "existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." Tenn.Code Ann. § 66–26–103 (1982). As recently explained by the Tennessee Court of Appeals in *American City Bank v. Western Auto Supply Co.,* 631 S.W.2d at 423–424:

> "Tennessee courts have taken the same position in mortgage registration cases. Thus, it has been held that the failure to comply with the conditions precedent to recording renders the physical registra-

tion of the instrument of no avail. The deed of trust is as if it had not been entered in the records. *Galt v. Dibrell,* 18 Tenn. 146, 154–155 (1836). As the supreme court said in *Pennington v. Webb-Hammock Coal Co.,* 182 Tenn. 33, 36, 184 S.W.2d 47, 48 (1944), where the conditions precedent to recording—*such as a proper acknowledgment*—have not been met, the instrument is 'not entitled to registration although it was spread on the books of the register's office....' *Ibid.* Because the instrument was 'not entitled to registration,' it did not serve as notice to other creditors. *Ibid. See Citizens' Bank of Jellico v. McCarty,* 99 Tenn. 469, 470–471, 42 S.W. 4 (1897); *Henderson v. McGhee,* 53 Tenn. 55, 57 (1871). The registration does not create priority even though the defective instrument is physically filed. *Henderson v. McGhee, supra* at 57." (emphasis supplied).

An examination of the deeds in question reveals that their acknowledgments are not in conformity with the prescribed statutory language. Each of these deeds was acknowledged by a notary in substantially the following form:

> "Before me *personally appeared* Jeff B. Anderson, who acknowledged that he executed the foregoing instrument as his free act and deed for the purposes contained therein.

> WITNESS my hand and official seal in the County and State aforesaid,...." (emphasis supplied).

■ Upon comparison of this acknowledgment with the statutory form for acknowledgments, it becomes immediately apparent that the acknowledgments in the contested deeds fail to provide that the probating officer was "personally acquainted" with the grantor. Tennessee law is well settled that the omission of these or similar words constitutes a fatal defect in the acknowledgment of the deed and causes the deed to be null and void as to creditors and bona fide purchasers without notice. *See, e.g., In the Matter of Viking Co.,* 389

F.Supp. at 1231–1234, *aff'd* 510 F.2d 974; *In re Englewood Mfg. Co.,* 28 F.Supp. at 654–656; *Chattanooga Lumber & Coal Corp. v. Phillips,* 304 S.W.2d at 86; *Newton Finance Corp. v. Conner,* 33 S.W.2d at 96–. 97; *Savings, Building & Loan Association v. McClain,* 18 Tenn.App. 292, 76 S.W.2d 650, 654 (1934). As District Court Judge Neese observed in the case of *In the Matter of Viking Co.,* 389 F.Supp. at 1233, *aff'd* 510 .F.2d 974:

> "There is a long line of cases holding that the certificate of the officer taking an acknowledgment under T.C.A. § 64–2207 must show that such officer is acquainted, or personally acquainted, with the bargainor making the acknowledgment, and that, without such a showing, the certificate of acknowledgment is a nullity, as is the registration of the instrument." (citations omitted).

■ Nor can the acknowledgements in these deeds be salvaged by reference to the language that the grantor "personally appeared before" the notary. The Tennessee Supreme Court has specifically held that the term "personally appeared before" does not connote that the probating officer was "personally acquainted with" the grantor of the deed. *Newton Finance Corp. v. Conner,* 161 Tenn. 441, 33 S.W.2d at 96–97. *See also In re Englewood Mfg. Co.,* 28 F.Supp. at 655. *But see Hatcher v. Hall,* 292 S.W.2d 619, 622 n. 2 (Mo.App.1956). Indeed, the statute recognizes this difference in terminology by expressly requiring the certificate of acknowledgement to state both that the grantor personally appeared before *and* was personally acquainted with the notary preparing the certificate of acknowledgement.

An extensive review of Tennessee statutory and case law thus leaves no doubt that a probating officer must substantially comply with the statutory form in drafting a certificate of acknowledgement. Such compliance includes that the officer affirm that he or she is personally acquainted with the grantor of the instrument. Failure to ad-

here to these prescribed standards will render the deed vulnerable to attack by creditors and bona fide purchasers without notice. These legal principles are literally etched in stone under Tennessee law and were reaffirmed as recently as 1981 by the Tennessee Court of Appeals. *American City Bank v. Western Auto Supply Co.,* 631 S.W.2d at 423–424.

The defendants nevertheless urge, without any supporting authority, that these standards are archaic and, if challenged, would not be upheld by Tennessee courts. The defendants apparently overlook the fact that this is a *legislative* requirement which the state legislature considered necessary to deter possible fraudulent conduct. Section 66–22–107 of the Tennessee Code explicitly provides that the probating officer *shall* use the form of certificate of acknowledgment set forth in the statute. This court should be extremely hesitant, as should any court, to interfere with such an express legislative directive. As the Tennessee Supreme Court correctly observed in *Newton Finance Corp. v. Conner,* 33 S.W.2d at 97:

> "The General Assembly has deemed it necessary in two statutes to prescribe permissible forms for certificates authenticating instruments for registration. Courts should be slow in approving substituted language as equivalent in substance; and such approval should be withheld, unless the substantial conformity with the legislative certificate is clear and free from doubt. Otherwise the legislative mandate will be defeated. The certificate of the identity of the person making the acknowledgment with the grantor 'is one of the most important requirements—as a protection against fraud—contained in the formula prescribed by the statute.' *Figuers v. Fly,* 137 Tenn. 358, 370, 193 S.W. 117, 120."

This same concern was reiterated by the United States District Court for East Tennessee in a context strikingly similar to the present case. The court specifically found

that the registration of a creditor's deed of trust was fatally defective since the certificate of acknowledgment did not state that the probating officer was personally acquainted with the grantor. In holding that the trustee in bankruptcy's interest was therefore superior to the creditor's, the district court explained:

"It is insisted that this is a case in equity and that the equities are with the petitioners. Without discussing the merits of this claim, and assuming that the equities are with the petitioners in this particular case, it must be remembered that an act of a legislative body is a mandate from the people, which is, in theory at least, promulgated for the greatest good for the greatest number. The Courts have no right to change legislation in a given case even though the Court might feel that the equities are not fully met."

*In re Englewood Mfg. Co.,* 28 F.Supp. at 655–656.

In any event, this court finds little support for the defendants' contention that the Tennessee law on acknowledgments is outdated or deviates significantly from the law on acknowledgments in other jurisdictions. *See, e.g., Martin v. Crocker-Citizens National Bank,* 349 F.2d 580, 582–583 (9th Cir. 1965); *In the Matter of Production Aids Co.,* 193 F.Supp. 180, 184–185 (S.D.Iowa 1961); *In re Atlantic Smokeless Coal Co.,* 103 F.Supp. 348, 349–350 (S.D.W.Va.1952); *Edenfield v. Wingard,* 89 So.2d 776, 777–778 (Fla.1956); *Citizens National Bank v. Denison,* 165 Ohio St. 89, 133 N.E.2d 329, 332–333 (1956); *Beitel v. Wagner,* 11 Tex.Civ. App. 365, 32 S.W. 366, 366–367 (1895). *But see In the Matter of New York Investors Mutual Group,* 153 F.Supp. 772, 776 (S.D.N.Y.1957); *Hatcher v. Hall,* 292 S.W.2d at 622 n. 2; *Harris v. Pratt,* 37 Kan. 316, 15 P. 216, 218 (1887).

Nor is the court persuaded by the defendants' argument that their deeds are valid against creditors and bona fide purchasers without notice in spite of their failure to conform with Tennessee's registration statutes. In support of this proposition, the defendants rely almost exclusively on the United States District Court for East Tennessee's recent decision in *Lancaster v. Key (In re Easterly),* 24 B.R. 897 (E.D.Tenn. 1982), *rev'g* 18 B.R. 749 (Bkrtcy.E.D.Tenn. 1982). The issues presented in *Lancaster* are substantially similar to those in this case. In *Lancaster,* the defendants had purchased a house and lot from the debtors and paid the entire purchase price for the house prior to the filing of the debtors' bankruptcy petition. The defendants did not, however, record the warranty deed received from the debtors and the trustee subsequently sought to avoid this deed under § 544(a). The bankruptcy court held that the trustee could avoid this unrecorded deed pursuant to his § 544(a)(1) and (2) rights as a judgment lien creditor holding an execution returned unsatisfied as of the commencement of the bankruptcy case. The district court reversed this decision on the basis that (1) the Tennessee Supreme Court case of *Leech v. Hillsman,* 76 Tenn. 747 (1882), precludes an execution creditor of the debtors from having any greater rights in property transferred by the debtors than the debtors themselves possess and (2) the payment of the purchase money by the defendants created a resulting trust on their behalf in the property and any third party purchaser or creditor of the debtor would take the property subject to this trust and without regard to the registration laws of Tennessee.

After an extensive review of this issue, this court is compelled to conclude that the analysis in *Lancaster* is incorrect. The relied upon *Leech v. Hillman* decision is not contrary to Tennessee's registration statute which explicitly provides that an improperly recorded or unrecorded deed is null and void as to "existing or subsequent creditors of, or bona fide purchasers from, the *makers* without notice." (emphasis added). Tenn. Code Ann. § 66–26–103 (1982). In *Leech,* the owner had apparently conveyed property by an absolute deed to the debtor. The

evidence nevertheless demonstrated that both parties intended the "conveyance" to be a mortgage. Subsequently one of the debtor's creditors, having execution, levied upon the land and sold it. The court concluded that, since the debtor never had any interest in the property other than the retention of a security interest in the form of a mortgage, no transfer of title had ever occurred between the debtor and the owner of the property. The debtor was therefore not a "maker" under § 66–26–103 and the court accordingly held that Tennessee's registration laws *did not apply* to this particular transaction. As the court explained:

"It is clear the language of our registration laws do not include nor control the question now before us. They only fix the rights, and give preference to existing or subsequent creditors or *bona fide* purchasers of, and from the maker of the deed. They do not profess to, nor do they in fact refer to, or regulate the rights of a creditor, as we have said, in a case like the present."

*Leech v. Hillsman,* 76 Tenn. at 750.

This interpretation of *Leech* is sustained by subsequent Tennessee decisions. *See, e.g., Wright v. Black,* 159 Tenn. 254, 17 S.W.2d 917, 918–919 (1929); *Bryant v. Bank of Charleston,* 107 Tenn. 560, 64 S.W. 895, 896 (1901); *Hornsby v. City National Bank,* 60 S.W. 160, 169 (Tenn.Ch.App.1900); *Bradshaw v. Georgia Loan & Trust Co.,* 59 S.W. 785, 788 (Tenn.Ch.App.1900). As the Tennessee Court of Chancery Appeals commented in *Bradshaw v. Georgia Loan & Trust Co.,* 59 S.W. at 788:

"These cases [including *Leech*] illustrate in various ways the proposition that the creditor cannot stand higher than his

debtor, *except under the registration laws,* and where the creditor stands in that relation to a vendor of property." (emphasis added).

The *Leech* opinion is therefore inapposite to this case since the debtor was clearly the maker of these disputed deeds.[6] Accordingly, any creditor of the debtor or bona fide purchaser from the debtor without notice could avoid these deeds pursuant to § 66–26–103 of the Tennessee Code.

Nor can this court accept the second premise in *Lancaster* that the grantee's payment of the purchase price for real property creates a resulting trust which is superior to the interests of any creditor or bona fide purchaser without notice of the grantor under Tennessee's registration statutes. In adopting this analysis, the district court in *Lancaster* places great reliance upon the 1816 decision of the Tennessee Supreme Court in *Russell v. Stinson,* 4 Tenn. (3 Hayw.) 1 (1816). Although the case is confusing because it involves an extensive discussion of several antiquated English statutes, a close reading of *Russell* reveals that it does not stand for the proposition that a resulting trust will save conveyances which are otherwise void under Tennessee's current registration laws. The decision involved a dispute between the grantee of a conveyance of real property and his creditors. The court ultimately concluded that the deed between the grantor and grantee was not properly registered and therefore no legal title ever passed to the grantee. The court nevertheless found that the grantee did acquire an equitable interest in the land by his payment of the purchase price. The court thus held that creditors of *the grantee* could execute on his equitable interest in the real property.

6. In addition to the *Leech* opinion, the district court in *Lancaster* relies on the Tennessee Supreme Court's decision in *Evans v. Belmont Land Co.,* 92 Tenn. 348, 21 S.W. 670 (1893). In *Evans,* an execution creditor levied upon his debtor's apparent equitable interest in real property which supposedly had arisen through an unrecorded conveyance from a third party. The court ultimately determined that the debtor had no legal or equitable interest in this property. *Evans v. Belmont Land Co.,* 21 S.W. at 674. Once again, this case involves the legal relations between a creditor and a *grantee* of an instrument of conveyance. Since the creditor was not a creditor of the *maker* of the instrument, Tennessee's registration laws had no relevance in the decision of the court.

*Russell v. Stinson,* 4 Tenn. (3 Hayw.) at 1–10. The opinion in *Russell* does not address the rights of any creditors of *the grantor,* the maker of the instrument, and is therefore of no relevance when a creditor or bona fide purchaser *of the grantor* seeks to avoid a conveyance by the grantor under Tennessee's registration laws.

■ In any event, the defendants in this case have not established that the transactions in issue were ever intended to be resulting trusts. A review of the relevant authorities reveals that a resulting trust can only be established by evidence that such a trust was intended by the parties. *See, e.g., Fehn v. Schlickling,* 26 Tenn.App. 608, 175 S.W.2d 37, 40 (1943); Banks, *A Survey of the Constructive Trust in Tennessee,* 12 Mem.St.U.L.Rev. 71, 84–89 (1981).[7]

The conditions under which a resulting trust will be implied are set forth with particularity in *Gibson's Suits in Chancery,* a respected and established treatise on the equitable law of Tennessee. *Gibson's* explains the Tennessee law on resulting trusts as follows:

> "Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called *presumptive* trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, gener-

ally called *resulting* trusts, because the trust is the result which Equity attaches to the particular transaction.

> Resulting trusts arise: (1) When property is conveyed, or devised, on some trust which fails, in whole or in part; (2) When land is conveyed to a stranger without any consideration, and without any use, or trust, declared; (3) Where the property is purchased and the title taken in the name of one person, but the purchase price is paid by another; and (4) Where the purchaser pays for the land but takes the title, in whole or in part, in the name of another." (footnotes omitted).

Gibson's Suits in Chancery § 382, at 359 (W. Inman 6th ed. 1982), *cited with approval in Browder v. Hite,* 602 S.W.2d 489, 492 (Tenn.App.1980).

■ In the present case, the parties to these property transactions had no intentions to establish any type of a trust arrangement. Quite to the contrary, the debtor intended to convey his entire fee simple interest in these properties. The imposition of a resulting trust under these circumstances would emasculate the Tennessee statutory requirement that a deed must be properly recorded and thereby nullify the basic underlying policy of the registration statutes, which is to provide notice of the conveyance to all the world. Indeed, the courts of Tennessee have been very hesitant to infer the existence of a resulting trust where such a trust would defeat the rights of a subsequent bona fide purchaser

---

7. The opinion of *In the Matter of Smith,* 348 F.Supp. 1290 (E.D.Va.1972), cited in *Lancaster,* is not contrary to this result. In *Smith,* a mother had conveyed a house and lot to her daughter. After the daughter filed her petition in bankruptcy under the former Bankruptcy Act, the trustee sought to bring this property into the bankruptcy estate, either as the daughter's property which became property of the estate upon the filing of the bankruptcy petition or as property he could recover through his powers as a lien creditor of the daughter under § 70(c) [11 U.S.C. § 110(c)(3)] of the former Bankruptcy Act. The debtor's mother contended that her daughter held title to the property impressed with a resulting trust in favor of the mother. In fact, the evidence showed that the mother had made all payments on the property and had at all times resided on the property. The mother explained that the sole reason title was vested in her daughter's name was because the mother could not qualify for a home loan and her daughter could. *In the Matter of Smith,* 348 F.Supp. at 1292–1293. The court held that the trustee could not avoid a resulting trust if such a trust did exist. The court accordingly remanded the case to determine if the parties *intended* to create such a trust. *In the Matter of Smith,* 348 F.Supp. at 1294–1295.

under Tennessee's registration statutes. *See, e.g., Lea v. Polk County Copper Co.,* 62 U.S. 493, 497–498, 16 L.Ed. 203 (1858); *Foster v. Jeffers,* 140 Tenn. 446, 205 S.W. 122, 123 (1918); *Gates v. Card,* 93 Tenn. 334, 24 S.W. 486, 486–487 (1894). This same rationale is equally supportive of the proposition that a resulting trust should not be allowed to defeat the rights of a creditor of the maker under the registration laws unless clear evidence of such a trust exists. As Justice Story explained sometime ago in a similar context, "Courts of Equity will never raise a resulting trust where it would contravene any statutable provisions founded in public policy, or would assist the parties in evading these provisions." 3 J. Story, Commentaries on Equity Jurisprudence § 1599, at 238 (14th ed. 1918).

Having concluded that the deeds at issue were defectively acknowledged and therefore null and void as to the maker's creditors and bona fide purchasers of the maker without notice, the court must now address the defendants' multi-prong attack on the trustee's ability to avoid these instruments pursuant to 11 U.S.C. § 544(a). The defendants essentially contend that the trustee's complaint must fail because (1) no bona fide purchaser or creditor whose rights the trustee inherits under § 544(a) could avoid these disputed deeds under applicable state law, (2) the trustee's interest is inferior to the defendants' "equitable interests" in the real property in question and (3) even assuming the trustee's position is superior to the defendants', the trustee has failed to preserve his rights under Tennessee's judgment lien statutes.

■ After careful consideration of the defendants' extensive analysis and argument, the court concludes that the defendants' contentions cannot be sustained. The defendants first assert that no creditor or bona fide purchaser of the debtor could defeat the defendants' interests under Tennessee's registration laws and therefore, since the trustee can achieve no greater status than these parties possess under

state law, his complaint to avoid these transactions must be dismissed. The defendants correctly observe that § 544(a) only confers to the trustee those rights which a hypothetical judgment lien creditor, unsatisfied execution creditor or bona fide purchaser of real property from the debtor would actually possess under applicable state law. The trustee in bankruptcy thus has no power to set aside any transaction which could not be avoided by these entities under state law. *See, e.g., McCannon v. Marston,* 679 F.2d 13, 15–17 (3rd Cir.1982); *Home Life Insurance Co. v. Jones,* 20 B.R. 988, 992 (Bkrtcy.E.D.Pa. 1982); *In re Chateau Royale, Ltd.,* 6 B.R. 8, 10–12 (Bkrtcy.N.D.Fla.1980).

■ In conformity with this analysis, the court finds that the trustee cannot avoid these transfers by the debtor through his rights as a bona fide purchaser of real property as defined in § 544(a)(3). Tennessee law expressly provides that an improperly acknowleged deed is null and void as to a bona fide purchaser from the maker, the debtor in this case, without notice. Tenn. Code Ann. § 66–26–103 (1982). A bona fide purchaser from the debtor would certainly have been put on notice of the debtor's prior conveyances of these properties. A purchaser of property has an affirmative obligation under the laws of Tennessee to search the public record and, even if the deeds in this case were improperly acknowledged, the defect was not so blatant as to inhibit any prospective purchaser from discovering that the debtor had previously conveyed these properties. *See Texas Co. v. Aycock,* 190 Tenn. 16, 227 S.W.2d 41, 46 (1950); *Parker v. Hall,* 39 Tenn. (2 Head) 641, 644–645 (1859); *Branstetter v. Poynter,* 32 Tenn.App. 189, 222 S.W.2d 214, 216 (1949). *See also Jonas v. Walgreen Arizona Drug Co. (In the Matter of Wonderfair Stores, Inc.),* 511 F.2d 1206, 1214 (9th Cir. 1975); *Carroll v. National Live Stock Credit Corp. (In the Matter of Davis),* 286 F.2d 362, 364 (10th Cir.1961).[8] Any buyer from

---

8. This court is aware of several decisions which have held that a defective certificate of acknowledgment will not serve as notice "under the registration laws." *See, e.g., In the Matter*

the debtor would have at least constructive notice of these conveyances and could not achieve the priority accorded under Tennessee's registration laws. The trustee in bankruptcy can assume no greater status than this hypothetical purchaser would possess under state law. *See, e.g., McCannon v. Marston,* 679 F.2d at 15–17; *Home Life Insurance Co. v. Jones,* 20 B.R. at 992; *In re Chateau Royale, Ltd.,* 6 B.R. at 10–12.

■ This finding is of little consolation to the defendants, however, since the trustee may still avoid these transfers through his powers as a judgment lien or unsatisfied execution creditor under § 544(a)(1) and (2). The case law of Tennessee is well established that such creditors may avoid a defectively acknowledged deed regardless of whether they have notice of the improperly recorded transaction. *See, e.g., Southern Bank & Trust Co. v. Folsom,* 75 F. 929, 933–935 (6th Cir.1896); *City & County Bank v. United States,* 473 F.Supp. 487, 487–488 (E.D.Tenn.1979); *Lancaster v. Hurst,* 27 B.R. 740, 743–745 (Bkrtcy.E.D.Tenn.1983); *McCoy v. Hight,* 162 Tenn. 507, 39 S.W.2d 271, 272 (1931); *Wright v. Black,* 17 S.W.2d at 918–919; *Hunt v. Curry,* 153 Tenn. 11, 282 S.W. 201, 206 (1926); *Campbell v. Home Ice & Coal Co.,* 126 Tenn. 524, 150 S.W. 427, 428 (1912); *Wilkins v. McCorkle,* 112 Tenn. 688, 80 S.W. 834, 835 (1904); *Lookout Bank v. Noe,* 86 Tenn. 21, 5 S.W. 433, 436 (1887); *Henderson v. Ish,* 3 Shannon at 85; *Turbeville v. Gibson,* 52 Tenn. (5 Heisk.) 565, 582 (1871);

*Hames v. Archer Paper Co.,* 45 Tenn.App. 1, 319 S.W.2d 252, 258 (1958).[9] The trustee therefore, while being unable to claim any rights through his powers as a bona fide purchaser under state law, may nevertheless avoid these transfers pursuant to his state defined status under § 544(a)(1) and (2) as a judgment lien or execution creditor of the debtor.

■ Furthermore, the defendants rerecordation of these deeds with the proper acknowledgments after the filing of the debtor's bankruptcy petition does not shield them from the trustee's complaint. Such reregistration is only effective as of the date filed and cannot relate back to defeat the rights of an intervening party such as the trustee. *See Southern Building & Loan Association v. Rodgers,* 104 Tenn. 437, 58 S.W. 234, 235 (1900); *Citizens' Bank v. McCarty,* 99 Tenn. 469, 42 S.W. 4, 5 (1897); *Henderson v. Ish,* 3 Shannon at 85; *Harrison v. Wade,* 43 Tenn. (3 Cold.) at 508–509; *Cunningham v. Roper,* 40 Tenn. (3 Head) at 486–487.[10]

The court also rejects the defendants' second contention that the trustee can not utilize § 544(a)(1) or (2) to avoid the defendants' "equitable interests" in these real properties. The defendants characterization of what constitutes an "equitable interest" is at best amorphous. They nevertheless rely on various federal bankruptcy statutes, including § 541(d) and § 365, in urging this court to recognize an equitable

*of Viking Co.,* 389 F.Supp. at 1233; *Pennington v. Webb-Hammock Coal Co.,* 184 S.W.2d at 48. These cases are, however, distinguishable on the basis that they only address the receipt of *actual notice* under the registration statutes and do not discuss the possibility that a defectively recorded instrument might, while not conveying actual notice, be constructive notice to any party searching the public records.

9. The Tennessee Supreme Court opinion of *Leech v. Hillsman* does contain language to the effect that an execution creditor cannot occupy a higher position under Tennessee's registration laws than a bona fide purchaser of property. *Leech v. Hillsman,* 76 Tenn. at 751. This court cannot, however, accept this ambiguous statement in view of clear and unmistakable case authority to the contrary.

10. These cases also clearly indicate that § 66–26–113 of the Tennessee Code does not validate instruments in which the probating officer has failed to affirm in the acknowledgment that he is personally acquainted with the grantor. Tenn.Code Ann. § 66–26–113 (1982) provides as follows:

"*Omission of words from certificate.*—The unintentional omission by the clerk or other officer of any words in a certificate of an acknowledgment, or probate of any deed or other instrument, shall in nowise vitiate the validity of such deed, but the same shall be good and valid to all intents and purposes, if the substance of the authentication required by law is in said certificate."

exception to the interests which a trustee may avoid pursuant to § 544(a). None of these lines of analysis, however, suggests that such an exception exists.

■■■ The defendants first allege that the trustee's powers under § 544 are necessarily circumscribed by 11 U.S.C.A. § 541(d) (West 1979) which provides as follows:

"(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

This court does not find this argument persuasive. Section 541(d) poses no barrier to the trustee's complaint seeking to avoid these liens since the debtor did not possess legal title to these properties at the commencement of his bankruptcy petition. Section 541(d) by its very terms restricts its applicability solely to property in which the debtor holds legal title as of the commencement of the bankruptcy case. When the debtor in this case filed his Chapter 7 petition, he possessed no interest whatsoever in the real property at issue. The debtor had transferred the properties by deed prior to the filing of the petition and, as between him and his transferees or their successors, the deeds were valid and binding. *See* Tenn.Code Ann. § 66–26–101. The problem for the defendants in this case is that these deeds were not properly recorded under Tennessee's registration laws and are therefore vulnerable to attack by creditors of the debtor and by the trustee in bankruptcy who stands in the shoes of these creditors pursuant to § 544(a)(1) and (2).

■■■ In any event, a reading and comparison of § 541(d) and § 544 leads to the inescapable conclusion that § 541(d) does not represent a general limitation on the trustee's avoidance powers under § 544.[11] Section 541(d) qualifies the trustee's right under § 541(a) to succeed to certain property interests possessed by the debtor at the time of the filing of his bankruptcy petition. In contrast, § 544(a) arms the trustee at the time of the filing of the debtor's bankruptcy petition with all the rights and powers of various creditors and transferees of the debtor so as to avoid incomplete or improperly perfected transfers of the debtor and thereby insure an equality of distribution among the debtor's general unsecured creditors. *See, e.g.,* 4 L. King, Collier on Bankruptcy ¶ 541.01, 541–5 to 541–9 and ¶ 544.01, 544–2 to 544–4 (15th ed. 1982); 2 W. Norton, Bankruptcy Law and Practice §§ 29.01 and 30.01 (1982). Section 544(a) in fact contemplates that the debtor has no remaining interest in the property which is the subject of the avoided transaction.[12]

---

11. This court recognizes that the United States Bankruptcy Court for the Western District of Washington recently held, after an extensive review of the legislative history of both § 541(d) and § 544(a), that § 541(d) does prohibit the trustee from defeating the rights of a purchaser of an unrecorded participation ownership interest in a secondary mortgage market transaction pursuant to § 544(a)(3). *In re Columbia Pacific Mortgage, Inc.,* 20 B.R. 259, 263–264 (Bkrtcy.W.D.Wash.1981). This finding was based on specific legislative history evidencing a congressional intent to exclude these types of transactions from the scope of § 544(a), *see In re Columbia Pacific Mortgage, Inc.,* 20 B.R. at 262–264, and provides no support for the defendants' much broader contention that the trustee cannot use § 544(a) to reach *any* property in which a third party pos-

sesses an "equitable interest." *See* 124 Cong. Rec. 17,413–17,414 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini); 2 W. Norton, Bankruptcy Law and Practice § 29.17, at 17–18 (1982).

12. The district court in *Lancaster v. Key* intimates that the trustee may only avoid "property interests owned by the bankrupt" pursuant to his powers under § 544(a). *Lancaster v. Key (In re Easterly),* 24 B.R. at 898. As this court has stated, § 544 gives the trustee the much broader power to avoid *any* transfer of property once possessed by the debtor which certain creditors or transferees of the debtor could have avoided at the time of the filing of the bankruptcy petition.

The trustee is thus given the ability to bring into the estate, in addition to the debtor's property as defined by § 541(a) and limited by § 541(d), any property which he can obtain through his avoidance powers under the Bankruptcy Code, including his ability to invalidate certain transfers by the debtor under § 544(a). *See* 11 U.S.C.A. §§ 541(a)(3), 550, 551 (West 1979). In a recent decision by the United States District Court for New Jersey, Judge Debevoise offered an excellent and thorough analysis of the independence of these two provisions. As Judge Debevoise explained in *Elin v. Busche*, 20 B.R. 1012, 1016–1017 (D.N.J.1982):

"The fallacy of plaintiff's position [that § 541(d) restricts the application of § 544(a)(3) ] lies in a misreading of § 541. Three sections of the Act must be read together—§ 541, § 551 and § 544. Granted that the bare language of these sections may appear to be elliptical, the meaning which emerges is that assets recoverable by a trustee pursuant to § 544 become property of the estate notwithstanding the provisions of § 541(d). In other words, if a person other than the debtor holds an equitable interest in assets subject to recovery under § 544, the provisions of § 541(d) upon which plaintiff relies do not prevent the trustee from recovering those assets.

Section 541(a)(4) provides that an estate is comprised of '[a]ny interest in property preserved for the benefit of or ordered transferred to the estate under section ... 551.' § 551 provides that '[a]ny transfer avoided under section ... 544 ... is preserved for the benefit of the estate but only with respect to property of the estate.' Thus, § 541, and § 551 which is incorporated therein by reference, bring within the debtor's estate property recoverable pursuant to § 544.

Although the House and Senate reports on the Act do not appear to have addressed this precise issue, the Commission on the Bankruptcy Laws of the United States did. In Section C of Part I of its report, under the heading 'General Recommendations,' the Commission wrote:

In addition to property owned by the debtor at the date of the petition [in bankruptcy], the property of the estate would include (a) recoveries under the avoidance sections of the proposed Act.

. . . . .

[*Report of the Commission on the Bankruptcy Laws of the United States,* H.R.Doc. No. 93–137, 93 d. Cong. 1st Sess., Part I, p. 192 (1973) (reprinted in *Collier on Bankruptcy,* Appendix 2 (15th Ed.1980)) ].

Part II of the *Commission Report* included proposed statutory provisions accompanied by explanatory notes. Proposed § 4–601, identifying 'Property of the Estate'—obviously the model for § 541—included as property of the estate all '*property recovered pursuant to* [proposed] sections 4–603 to 6–608 inclusive and [*proposed*] *section 4–610.*' Comment Two to proposed § 4–601 states that '[p]roperty of the estate [includes] ... property recovered under the "avoiding powers" of ... § 4–610.' Finally, proposed section 4–610 provided:

*Preservation of Voidable Transfer.* Whenever any transfer is voidable by the trustee, the court may determine on complaint filed by the trustee after hearing on notice to persons claiming an interest in the property subject to the transfer, whether the transfer shall be avoided or shall be preserved for the benefit of the estate.

Congress ultimately chose to make such preservation 'automatic' upon exercise of the trustee's powers, and, as a result, any property made subject to those powers is included in the estate by virtue of § 541(a)(4).

. . . . . "

This court concurs completely in Judge Debevoise's interpretation of these two Code sections and accordingly concludes that § 541(d) does not bar the trustee from avoiding these seven deeds pursuant to § 544(a)(1) or (2).

Further, this court cannot accept the defendants' inference that these deeds are in essence executory contracts for the purchase of land which are governed by 11 U.S.C. § 365 and cannot be avoided under 11 U.S.C. § 544. The defendants, relying in part on the Third Circuit's recent decision in *McCannon v. Marston,* 679 F.2d at 17–18, contend that § 365 requires the trustee to determine whether to accept or reject these "executory contracts." If the trustee rejects these contracts then, pursuant to 11 U.S.C. § 365(i) and (j), the defendants may either treat such contracts as terminated or remain in possession of the real property on the condition that they continue to make any payments due under the contract. Should the defendants decide to remain in possession, the trustee would then be obligated to deliver title for the property to them.[13] The defendants urge this result is necessary to protect their beneficial interests in these real properties.

The basic problem with the defendants' premise is that the conveyances in question are completed transfers and not executory contracts. The legislative history to § 365 defines executory contracts as "contracts on which performance remains due to some extent on both sides." S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S. Code Cong. and Ad.News 5787, 5844. *See also Fenix Cattle Co. v. Silver (In re Select-*

*A-Seat Corp.),* 625 F.2d 290, 292 (9th Cir. 1980); *In re California Steel Co.,* 24 B.R. 185, 197 (Bkrtcy.N.D.Ill.1982); *In the Matter of North American Dealer Group, Inc.,* 16 B.R. 996, 1000 (Bkrtcy.E.D.N.Y.1982); *Burger King Corp. v. Rovine Corp.,* 6 B.R. 661, 664 (Bkrtcy.W.D.Tenn.1980). The various contracts for the sale of land in this case were obviously completed at the time of the filing of the debtor's bankruptcy petition. The debtor had previously conveyed title to each of these properties in exchange for a set purchase price. As between the parties to these transactions, there is no doubt that the debtor had transferred title and that the deeds given to the transferees were enforceable against the debtor. *See* Tenn.Code Ann. § 66–26–101. These conveyances were therefore complete when the debtor received payment and delivered title to the transferees. *See Mellon Bank v. Sholos,* 11 B.R. 782, 786 (Bkrtcy.W. D.Pa.1981). This case is thus significantly different from *McCannon v. Marston* in which the purchaser of the real property had not, except for a $500.00 deposit, paid the purchase price for the land to the debtor and the debtor had not transferred title to the purchaser. *McCannon v. Marston,* 679 F.2d at 17–18.[14]

In short, the dilemma for the defendants is that the deeds transferred by the debtor

---

**13.** 11 U.S.C.A. § 365(i) (West 1979) provides: "(i)(1) If the trustee rejects an executory contract of the debtor for the sale of real property under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property.
(2) If such purchaser remains in possession—
(A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and
(B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract."

11 U.S.C.A. § 365(j) (West 1979) provides: "(j) A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid."

**14.** The defendants' citation to and reliance on *In re Booth,* 19 B.R. 53 (Bkrtcy.D. Utah 1982), is misplaced. *Booth,* which represents an extensive and detailed analysis of whether a contract for deed should be treated as a lien rather than as an executory contract when the debtor is the purchaser of property, does not give the slightest indication that completed conveyances such as those in this case should be considered "executory contracts."

prior to the filing of his bankruptcy petition were not properly recorded. The duty to properly register these instruments rests with the transferees, not with the debtor as the defendants seem to imply. The failure of the transferees to record these deeds in conformity with Tennessee's registration statutes renders them null and void as to creditors of the debtors and also as to the trustee in bankruptcy, who assumes the rights of these creditors for the benefit of the bankruptcy estate pursuant to § 544(a)(1) and (2).

■■ Lastly, the court rejects the defendants' contention that the trustee has lost any rights he possesses pursuant to § 544(a) by his failure to comply with Tennessee's judgment lien statutes. The defendants initially assert that, pursuant to Rule 602 of the Federal Rules of Bankruptcy Procedure and Tennessee case law, the trustee was required to file a copy of the debtor's bankruptcy petition in the county where these properties were located in order to perfect his interest under § 544(a).[15] When the trustee failed to take this action, the defendants refiled their deeds in the county register's office with the correct form of acknowledgment. The defendants now insist that their refiling rectifies any prior defects in their deeds as against the trustee who has failed to record a copy of the debtor's bankruptcy petition in the appropriate county register's office.

The defendants' analysis must fail for two reasons. First, Bankruptcy Rule 602 only requires the trustee to file a copy of the bankruptcy petition in the register's office of every county where the *debtor* has an interest in real property not exempt from execution. Once again, this court would stress that the trustee seeks to avoid these transfers through his § 544(a) powers as a judgment lien or unsatisfied execution creditor of the debtor and makes no claim to these properties in his position as successor to the debtor's interest in property under § 541(a)(1). The debtor, who conveyed these properties prior to the filing of his bankruptcy petition, has no interest in these properties and therefore Rule 602 is not applicable in this case.

Secondly, federal law is well established that the trustee acquires his status under § 544(a) as of the commencement of the case and he does not need to comply with any applicable state notice requirements in order to perfect his § 544 lien. *See, e.g., Sampsell v. Straub,* 194 F.2d 228 (9th Cir. 1951), *cert. denied* 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338 (1952); *McCannon v. Marston (In re Hotel Associates, Inc.),* 10 B.R. 668, 670 (Bkrtcy.E.D.Pa.1981), *rev'd on other grounds,* 679 F.2d 13 (3rd Cir.1982); *In re Mitchell,* 9 B.R. 577, 578–579 (Bkrtcy. D.Or.1981); 4 L. King, Collier on Bankruptcy, ¶ 544.02, 544–7 to 544–7 to 544–8 (15th ed. 1982).[16] To hold otherwise would severely handicap the trustee in utilizing his § 544(a) rights and frustrate the Congres-

---

**15.** Fed.R.Bankr.P. 602 provides in pertinent part:

"(a) *Real Property.* As soon as possible after his qualification a receiver shall record a certified copy of the petition without schedules or of the order of adjudication, if any, in the office where transfers of real property are recorded in every county where the bankrupt has an interest in real property not exempt from execution. If a certified copy of the petition or order of adjudication has not previously been recorded in an office where recordation is required by the preceding sentence, the trustee shall as soon as possible after his qualification record in every such office a certified copy of the petition without schedules or of the order of adjudication, if any, or the order approving his bond. The recording of a copy pursuant to this subdivision is not necessary, however, in the county in which is kept the record of the original proceedings in the case or in any office where such a copy has previously been recorded."

**16.** To the extent that the Tennessee Court of Appeals' decision in *Lewis v. Jacobs,* Case No. 14,251 (Tenn.App. March 19, 1982), *acq. in result only* (Tenn. June 1, 1982), appears to reach a contrary result, this court would note the opinion's limiting language which explains that "[t]his court recognizes and concedes that the resolution of the issue in this appeal is not without doubt. However, in a doubtful case, this Court prefers to do that which is just rather than that which is unjust." *Lewis v. Jacobs,* slip op. at 9. Furthermore, the court would observe that the Supreme Court of Tennessee concurred in this decision in result only.

sional intent underlying § 544(a) of ensuring an equality of distribution among the debtor's general unsecured creditors.

■ Nor does the court find, as the defendants urge, that § 25–5–105 of the Tennessee Code requires the trustee to seek to avoid these transfers within one year after the filing of the bankruptcy petition.[17] The time limitations for the trustee's commencement of an adversary proceeding under 11 U.S.C. § 544 are governed exclusively by federal, not state, law. 11 U.S.C.A. § 546 (West 1979) expressly provides in this regard:

"(a) An action or proceeding under section 544 ... of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and

(2) the time the case is closed or dismissed."

This court appointed Sam J. McAllester, III, interim trustee on September 30, 1981, which appointment became final when no trustee was elected at the debtor's meeting of creditors on October 30, 1981. This proceeding was subsequently commenced on July 29, 1982. This case had not been closed on that date, and therefore the trustee's commencement of this proceeding is clearly timely under § 546. *See generally Fitzgerald v. Bertram (In the Matter of Killian Construction Co.),* 24 B.R. 848, 849–850 (Bkrtcy.D.Idaho 1982); *Ellenberg v. DeKalb County, Georgia (In re Maytag Sales and Service, Inc.),* 23 B.R. 384, 391 (Bkrtcy. N.D.Ga.1982).

After an extensive review of the trustee's position and the defendants' arguments, this court is convinced that the trustee can avoid the deeds in issue through his state defined status as a judgment lien or unsatisfied execution creditor under § 544(a)(1) and (2). At the same time, however, the court is equally persuaded that such a result would inflict a grievous injury on the defendants in this case. The record clearly reveals, and the parties do not dispute, that the defendants have paid a full and fair purchase price for these properties. Moreover, the defendants have been in open possession of these properties for an extended period of time and apparently several of the defendants have even made substantial improvements on the land which they purchased. The defendants have also attempted to comply with the state's recordation laws by filing a copy of each of their deeds in the proper register's office. The fact that these instruments were defectively acknowledged is no fault of the defendants except to the extent that they or their predecessors detrimently relied on certain professionals to properly record these disputed instruments. Finally, any of the debtor's creditors, who would stand to gain the greatest benefit if this property were recovered by the bankruptcy estate, should certainly have been aware that the debtor had transferred his interest in these properties, either through the defendants' open possession of these properties or by the deeds in the register's office which, even if defectively acknowledged, would have provided at least constructive notice to any party searching the records.

■ This court, sitting as a court of equity, cannot ignore the blatant and manifest injustice which would occur if the trustee were given possession of these properties on behalf of the bankruptcy estate. Nor does this court feel that the courts of Tennessee would tolerate such an inequitable result if a creditor of the debtor attacked the validity of these conveyances under Tennessee's registration statutes. Under both federal and Tennessee law, a court may create a constructive trust on behalf of a party if the court determines that "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Beatty v. Guggenheim*

---

17. Tenn.Code Ann. § 25–5–105 (1980) provides:

"*Period allowed for execution.*—The lien given by this chapter will be lost, unless an execution is taken out and the land sold within twelve (12) months after the rendition of the judgment or decree."

*Exploration Co.,* 225 N.Y. 380, 386, 389, 122 N.E. 378, 380 (1919), *quoted in Akers v. Gillentine,* 191 Tenn. 35, 231 S.W.2d 369, 371 (1948). *See also Chisholm v. Western Reserves Oil Co.,* 655 F.2d 94, 96 (6th Cir.1981); *Kransdorf v. Murray (In re Fidelity America Financial Corp.),* 24 B.R. 117, 119–120 (Bkrtcy.E.D.Pa.1982); *Travelers Insurance Co. v. Angus,* 9 B.R. 769, 771 (Bkrtcy.D.Or. 1981); *Matthews v. Crowder,* 111 Tenn. 737, 69 S.W. 779, 781 (1902); *Hoffner v. Hoffner,* 32 Tenn.App. 98, 221 S.W.2d 907, 909 (1949); *Fehn v. Schlickling,* 175 S.W.2d at 40; G. Bogert & G. Bogert, The Law of Trust and Trustees § 471 at 22–23 (2d ed. 1978); Banks, *supra,* at 84–89. As District Court Judge Neese recently observed, constructive trusts are " 'judge-created' trusts which enable a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another." *Gregory v. Binkley,* Civil Action No. 3–82–0036, slip op. at 4 (M.D. Tenn. January 27, 1983). *Gibson's Suits in Chancery* defines constructive trusts under Tennessee law in similar terms:

"Constructive trusts are so called because they are *constructed* by Courts of Equity in order to satisfy the demands of justice, without reference to any presumable intention of the parties. They include cases: (1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; or (2) where title to property is obtained by fraud, duress, or other inequitable means; or (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than would otherwise have been obtained; or, (4) *where a person acquires property with notice that another is entitled to its bene-*

*fits.* In all such cases, Equity, for the purpose of doing justice in the most efficient manner, constructs a trust out of the transaction, and makes a trustee of the person thus acquiring the title." (emphasis added) (footnotes omitted).

Gibson's Suits in Chancery § 383 at 361, *cited with approval in Browder v. Hite,* 602 S.W.2d at 492.

*Gibson's* expressly states that a constructive trust may be created by the court when a person acquires property with notice that another is entitled to its benefits. As this court previously noted, any creditor of the debtor whose position the trustee assumes pursuant to § 544(a) would have at least constructive notice of the defendants' interest in these properties. Such notice would be imputed either by the defendants' open and notorious possession of these properties or by the deeds filed on public record which, even if defectively acknowledged, would still inform anyone searching the record of the defendants' interest.

■ For all these reasons, the court is compelled to impose a constructive trust on these properties for the benefit of the defendants and shall order the trustee to return these properties to the defendant record titleholders.[18] The court shall nevertheless condition such return on payment by these defendants of all the trustee's costs and attorney's fees incurred in this proceeding. This proviso is necessary because the trustee's actions, which he was required by law to take and which were founded on a correct interpretation of the law, have given the defendants something which they did not have prior to the initiation of this proceeding—clear title to the property in question. As has been previously stated, a constructive trust is *created* by the court in order to avoid unjust enrichment. *Gregory*

**18.** This court is aware of, but not persuaded by, one commentator's suggestion that a constructive trust should only be found if no adequate remedy at law exists for the beneficiary of the trust. 5 A. Scott, The Law of Trusts § 462.3 at 3418–3419 (3d ed. 1967). As Professor Robert Banks recently noted in an exhaustive analysis of constructive trusts in Tennessee, such a prerequisite is "unnecessarily confusing and is inconsistent with the notion of the constructive trust as a remedial device." Banks, *supra,* at 106. *Accord* Bogert, *supra,* § 472, at 37–40. Nor is this court of the opinion that a fiduciary relationship between the parties must exist before the court can create a constructive trust. *See Watkins v. Watkins,* 106 Tenn. 1, 22 S.W.2d 1, 2–3 (1929); Scott, *supra,* § 462, at 3102–3103; Banks, *supra,* at 104. *But see Sommer v. Vermont Real Estate Investment Trust,* 25 B.R. 813, 817 (Bkrtcy.D.Vt.1982).

*v. Binkley,* slip op. at 3–4; *Browder v. Hite,* 602 S.W.2d at 492; Gibson's Suits in Chancery, *supra,* § 383, at 361. *See also International Refugee Organization v. Maryland Drydock Co.,* 179 F.2d 284, 287 (4th Cir. 1950). Before this court constructed this trust, the title possessed by each of the defendants would still be susceptible to attack under applicable Tennessee law. Therefore, the court will give the defendants clear title to these properties in a manner that will not penalize or work a hardship on the trustee for his efforts.

The court will accordingly enter an order granting the trustee's motion for summary judgment. The court will further order that the trustee holds this property in constructive trust for the benefit of the defendants. The trustee shall convey each defendant's interest in these properties upon that defendant's payment of his proportionate share of the trustee's costs and attorney's fees incurred in this proceeding. Lastly, the court anticipates that the trustee's expenses will ultimately be paid by the person or persons, including the attorney who drafted and/or the notaries who acknowledged these instruments, whose negligence resulted in these proceedings.

IT IS, THEREFORE, SO ORDERED.