Leech v. Hillsman.

J. K. LEECH v. J. H. & B. F. HILLSMAN et al.

CONVEYANCE. Mortgage. Priority of mortgagor over purchaser at execution sale. A conveys his land to B by an absolute deed, but the conveyance was, in fact, a mortgage to secure B as his security. A creditor of B's having execution, levies upon the land and sells the same. Held, that A, the mortgagor, is entitled to the land upon the payment of the mortgaged debt. A creditor, at execution sale, can obtain no higher or better title than his debtor had to the property.

FROM CARROLL.

Appeal from the Chancery Court at Huntingdon. JNO. SOMERS, Ch.

HAWKINS & McCALL for complainants.

HAWKINS & TOWNES for defendants.

FREEMAN, J., delivered the opinion of the court.

This case presents but a single question of law, there being no real controversy as to the facts. The question is, can a creditor of a party to whom land is conveyed by deed absolute on its face, but which in fact was but a mortgage, to secure the conveyee from liability as surety of the conveyor, obtain a valid title to the land by execution levied and sale made on judgment against the conveyee, as against the claim of the mortgagor or conveyor, who has paid the mortgage debt, and thereby entitled himself to a reconveyance—or even without this, the question may be stated

thus: Can such a creditor, by execution sale, obtain a title higher and better than his debtor had to the property?

This precise question, in the exact form now before us, has not been, so far as we are aware, presented for adjudication by this court. The cases cited by the counsel for the title of the creditor do not raise the question, nor is it referred to in any of them as we believe, except a remark of Judge Caruthers in the case of *Ruggles et al.* v. *Williams*, 1 Head, 145, in which he says: "If the vendee in such a case were to sell the fee, *or* the same be sold upon execution against him, neither the vendor nor his creditors could set up the parol defeasance." But, he adds, "*that question does not arise here.*" This statement is but an inadvertent *dictum* in that case, of the learned judge, as he, we take it, certainly did not deliberately intend to place an innocent purchaser on the same footing with a creditor, in such a case, and a creditor with notice of the nature of the conveyance would assuredly take, subject to the equity of the conveyor or mortgagor.

The case of *Charles* v. *Taylor*, 1 Heis., 528, was the case of a sale and registered conveyance, and afterwards a resale or agreement to reconvey to the vendor evidenced by a title bond, which was unregistered. The creditor, often last vendor, was held to have the right as against the unregistered title bond, a ruling clearly correct under our registration laws.

The case of *Turbeville* v. *Gibson*, 5 Heis., 565, was an effort by the creditor of Adams to have the

absolute conveyance declared fraudulent, which was resisted by Gibson, on the ground that it was a *bona fide* mortgage, to secure a small existing indebtedness at its date, and the main contest was on the claim of Gibson, to hold the land for future advances or for additional advances agreed to be made verbally— but not shown in the writing registered. The majority of the court held the conveyance valid, and not fraudulent, and further, all held it was good, if not fraudulent as to the actual indebtedness intended to be secured—and only bad as against the creditor as to the monies secured by the verbal agreement. The contest was between the creditors of the conveyor or mortgagor, and the mortgagee in that case, and not the creditors of the mortgagee. We need not refer to the other cases cited, as they do not decide the question now before us.

We may assume it settled in our State, whether rightly or wrongly, we need not determined, that a deed absolute on its face, may be shown to be only a mortgage or security for money, as between the parties to the same, and the rights of these parties will be always declared by the court on this basis, when clearly and satisfactorily made out: See *Ruggles* v. *Williams*, 1 Head, 141; *Jones* v. *Jones*, 1 Head, 105; *Turbeville* v. *Gibson*, 5 Heis., 565.

We take it to be equally well settled as the general rule, that a creditor can rise no higher than his debtor, and while he may appropriate that debtor's property to the payment of his debt, except so far as the law, as a matter of public policy, has exempted it from

seizure, he has no claim or equity in sound reason or law, to subject anything which the creditor himself did not own. In other words, the property of the debtor, the right which he possesses may be appropriated to the payment of the creditor, by virtue of the indebtedness, and in payment of it, but not the property or right of another, nor can the rights of a third party be impaired or affected by the claim of the creditor, nor disregarded for his benefit. As a matter of course, we do not include in these principles the arbitrary regulations of our registration laws, giving rights as against unregistered contracts and conveyances therein required to be registered. These stand on a sound public policy, and the rights of parties under them are distinctly defined by the statutes creating them.

It is clear the language of our registration laws do not include nor control the question now before us. They only fix the rights, and give preference to existing or subsequent creditors or *bona fide* purchasers of, and from the maker of the deed. They do not profess to, nor do they in fact refer to, or regulate the rights of a creditor, as we have said, in a case like the present.

We think, on sound and well established principles, the decree of the chancellor was correct. He held that the mortgagor had the superior right to the land, as against the purchaser claiming under an execution against the mortgagee.

A creditor who purchases his debtor's property of necessity, takes but what the debtor himself has. If he have the whole property he gets it—if only a

Leech *v.* Hillsman.

qualified property or title, his creditor must take it as he finds it—and so appropriate it. This must be so unless some principle can be found on which it can be assumed that the law has enlarged the rights of the. apparent owner in favor of his creditor, beyond what that owner himself was entitled to claim for himself. We know of no such principle as applicable to the case before us.

It is argued that the fact, that the conveyance stood on the register's book as an absolute one, should either on the principle of estoppel, or on the idea of the policy of our registration laws, preclude the conveyor from asserting his right as against the creditor of the conveyee. We are unable to see that this argument is sound. In view of our settled laws, such a conveyance is subject to be shown to be but a mortgage, and therefore but gives notice of such a conveyance, that is, one that may or may not be absolute and indefeasible. The conveyor, as in this case, being in possession as before, would preclude even a party paying his money for the land from sustaining the position of an innocent purchaser. It would be notice to him of an occupation of the land, and it would be his duty to inquire as to the nature of his possession, and in such case, would always take subject to whatever right the party in possession might be able to establish. This being so, it is beyond all dispute, a creditor with an execution, who stands on his legal rights, and is entitled to appropriate the legal rights of property of his debtor, cannot occupy a higher position than such a purchaser, the purchaser being always the more favored by our law.

As to the policy of the registration laws we need but say, that these laws themselves are but regulations adopted to subserve a public policy, and the Legislature has expressed in them very clearly the extent to which their arbitrary rules should go in subserving that policy, and we are not called on to go further in this direction than that body has thought fit to prescribe; our duty is, not to thwart that policy in any way, but in so far as we can, make the general body of our jurisprudence accord with it as far as may be compatible with sound principles and the settled rights of parties—but not to violate these rights, in order to subserve an assumed spirit of statutes, when the language does not require it; as to the equities of the parties, they are clearly in favor of the complainant. He conveyed his land as indemnity against a debt—he has paid that debt—the party has been saved harmless, and he is as between them, entitled to his land. The question is now, whether it shall be made to pay the debt of the party who was' to be indemnified, as well as his own debt. As against the property and the entire unexempted property of his debtor, the creditor has an undoubted right; but we are unable to see any principle on which he can, in this case, claim the right to appropriate more than his debtor has, which is a naked and legal title, subject to the equity of the mortgagor, upon the discharge of the mortgage debt.

The long settled principle in our State, that a purchaser at an execution sale gets no warranty, but takes subject to the doctrine of *caveat emptor*, is, we think,

Leech *v.* Hillsman.

conclusive of this case. That doctrine is, that the purchaser must stand on the title of the debtor whose property is sold—stands in his shoes—and must abide the result, purchasing a defective title at his own peril.

The fact that the purchaser is the creditor, can give no higher or better position, than if he had been another who paid the money; in fact, he is entitled to less consideration in justice and equity. If the title fails, he may have the satisfaction set aside, and can then enforce his debt as before, while a simple outside purchaser has no remedy, except probably to be subrogated to the creditor's rights under the doctrine of the case of *Smith* v. *Alexander*, 4 Sneed, 482 —a right not very clear—and particularly, if clear, it in many cases must be but to get the benefit of a judgment on an insolvent debtor for his money to be enforced by resort to a tedious litigation. We might refer to other analogies of the law in support of the conclusion reached, but deem what we have said sufficient.

The result is, the chancellor's decree is confirmed with costs.