In re George Washington HURST, Catheline Honeycutt Hurst, Debtors.

William L. LANCASTER, III, Trustee, Plaintiff,

v.

Betty Jean Kitts HURST, Defendant.

Bankruptcy No. 3–81–00342.
Adv. No. 3–81–1114.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 14, 1983.

Carter & Carter, Robert B. Carter, Johnson City, Tenn., for plaintiff.

Strand & Goddard, William H. Goddard, Dandridge, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This case presents a contest between the debtor's former wife, who claims a possessory interest in certain residential property under the provisions of an unrecorded final decree of divorce, and the trustee in bankruptcy. The plaintiff trustee contends the property occupied by the defendant is owned by the debtor husband and requests the court to determine whether the defendant has any rights in the property. The trustee also requests a money judgment against the defendant for a fair rental value of the disputed property. The defendant admits the property she occupies as her residence is owned by her former husband. She insists, however, that any interest of the trustee is subject to her right under the divorce decree to occupy the property rent free for so long as she does not remarry.

### I

The facts are generally undisputed. From their marriage date until the entry of a final decree of divorce on August 9, 1972, George Washington Hurst and the defendant Betty Jean Kitts Hurst were husband and wife. The divorce decree incorporates the parties' agreement that Betty Jean Kitts Hurst should be allowed to occupy the property at issue, which is admittedly owned by George Washington Hurst, "rent free so long as she does not remarry, and so long as she uses said house for the care of the said minor daughter and properly cares for said daughter." Final Decree of Divorce at 3. The divorce decree was entered upon the minutes of the Jefferson County Chancery Court on August 11, 1972, but it was not registered with the office of the register of deeds. With the possible exception of the divorce decree describing the interest of the defendant in the disputed property, no writing eligible for registration under Tenn.Code Ann. § 66–24–101 (1982) has ever been executed.

On March 2, 1981, nearly ten years after his divorce from the defendant, George Washington Hurst and his present wife, Catheline Hurst, filed their joint chapter 11 petition. Their case was converted to chapter 7 on October 27, 1981.

In his complaint, filed on December 23, 1981, the plaintiff trustee asserts there is considerable equity in the property at issue. The trustee avers he expects to encounter difficulty in obtaining possession of the premises occupied by the defendant. The court is asked to determine the rights of the defendant, if any, in the property and to enter a decree requiring the defendant to immediately vacate the property if her interest is inferior to that of the trustee. The

trustee also avers the disputed property has a fair market rental value of $350.00 per month; he requests a judgment against the defendant in the amount of $350.00 per month for the period between the commencement of the debtors' bankruptcy case and the hearing of his cause of action.

The defendant contends the trustee's interest in the residential property is subject to her right to occupy the premises under the terms of the divorce decree, which she interprets to authorize her occupancy rent free so long as she does not remarry. Defendant opposes the trustee's request for judgment against her for the fair market rental value of the premises. She also disputes the trustee's estimate of $350.00 per month as the fair market rental value of the property at issue. According to the defendant, the daughter described in the 1972 divorce decree as "said minor daughter" still resides with her in the disputed house.[1]

## II

Bankruptcy Code § 544 (Trustee as lien creditor and as successor to certain creditors and purchasers) enacts in part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C.A. § 544(a)(1979).

Commonly referred to as the "strong arm clause," this subsection is derived from section 70c of the former Bankruptcy Act. The status which it confers upon the trustee in bankruptcy is that of "the ideal creditor, irreproachable and without notice, armed *cap-a-pie* with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings." *In re Waynesboro Motor Co.,* 60 F.2d 668, 669 (S.D.Miss.1932). Section 544(a) bestows upon the trustee in bankruptcy all of the powers and rights available under the applicable state law to a "hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal (or equitable) processes for perfection of a lien upon all the property available for the satisfaction of his claim against the debtor." 4 Collier on Bankruptcy ¶ 544.02 (15th ed. 1982). Thus, the plaintiff trustee in this case is empowered with the rights of a judicial lien creditor, a creditor holding an execution returned unsatisfied, and a bona fide purchaser of real property from the debtor.

The trustee questions whether the defendant has taken the necessary steps under Tennessee law to perfect her occupancy interest, arising under the divorce decree, in the property at issue. Defendant contends it was not incumbent upon her to register the final decree of divorce to perfect her interest because the decree is not among

---

1. According to the provisions of the divorce decree, the daughter in question, Candy Kay Hurst, was born on November 16, 1962.

those writings eligible for registration listed in Tenn.Code Ann. § 66–24–101(a) (1982). Observing that the divorce decree did not divest the debtor of title to the property at issue and that the statute permits memoranda of judgments to be registered under circumstances immaterial herein, defendant insists the final decree of divorce was not eligible for registration.

Clearly, a creditor or a transferee of the debtor is not required to perform the impossible in order to perfect an interest. Therefore, neither the lien creditor test of § 544(a)(1) nor the bona fide purchase test of § 544(a)(3) requires perfection, vis-a-vis the bankruptcy trustee, of a transfer if the applicable law does not permit perfection. 124 Cong.Rec. H11097 (daily ed. September 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6436, 6456. However, the court must disagree with defendant's assertion that the divorce decree was ineligible for registration. The statute recites in part: "The following writings may be registered: ... (14) All instruments in writing transferring or conveying any right of ... occupancy ...." Tenn.Code Ann. § 66–24–101(a) (1982).[2] The divorce decree irrefragably provides for occupancy of the contested premises by the defendant, under certain conditions.

### III

The question of the eligibility of the divorce decree for registration is quite significant considering the Tennessee Code provisions pertaining to the registration of those documents enumerated in Tenn.Code Ann. § 66–24–101 (1982). Tenn.Code Ann. § 66–26–101 (1982) enacts:

*Effect of instruments with or without registration.*—All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided.

Tenn.Code Ann. § 66–26–102 (1982) provides that the registration of a document or writing eligible for registration is effective to give notice "to all the world" from the time of noting for registration. Most significantly, Tenn.Code Ann. § 66–26–103 (1982) recites:

*Unregistered instruments void as to creditors and bona fide purchasers.*—Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

Defendant asserts, based on her actual possession, the rights of the trustee are subject to her rights. Presumably, it is defendant's contention the trustee should be charged with notice of her occupancy rights since she was actually in possession of the disputed property when the bankruptcy case of the debtors was commenced. Indeed, the Third Circuit, applying Pennsylvania law, recently determined § 544(a) does not permit a bankruptcy trustee to avoid the purchase of a condominium unit in a bankrupt hotel even though the purchase agreement was unrecorded since the applicable state law required the trustee to inquire into the interest of the purchaser in possession. *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982). The court of appeals reversed the judgment of the district court, which had affirmed the bankruptcy court's holding that the trustee was a bona fide purchaser without knowledge of the purchaser's interest under the explicit terms of § 544(a)(3).

The court in *McCannon* was concerned with the interrelationship of the § 544(a)(3) rights of the trustee in bankruptcy under Pennsylvania law and the prepositional phrase "without regard to any knowledge of the trustee or of any creditor." 11 U.S.

---

**2.** This portion of the statute is unchanged from the provision effective when the defendant and the debtor were divorced in 1972.

744

C.A. § 544(a) (1979). The relevant Pennsylvania recording statute protects a holder of an unrecorded deed or other instrument against a party recording with notice of the unrecorded interest in real property. The *McCannon* court determined the prepositional phrase was included out of a concern that actual, personal knowledge of a trustee might impinge upon his status as a hypothetical lien creditor. Accordingly, the court of appeals concluded Congress did not intend for the prepositional phrase to "nullify all state law protections of holders of equitable interests" who may have failed to record their interest. *McCannon,* 679 F.2d at 16.

The origin of the relevant Tennessee registration provisions may be traced to 1831 Tenn.Pub. Acts, ch. XC, §§ 6 and 12. Insofar as the question before the court is concerned, the current provisions are immaterially modified from both the original enactment and intervening predecessors. In fact, there is a very substantial degree of similarity between Tenn.Code Ann. §§ 66–26–103 (1982) and § 12 of the 1831 Act, which recites in apposite part:

> That all such deeds and other instruments mentioned in the first section of this act, not so proved and registered as aforesaid, shall be null and void, as to existing or subsequent creditors, or bona fide purchasers without notice . . . .

Two of the several precursors of both Tenn.Code Ann. § 66–26–101 (1982) and Tenn.Code Ann. § 66–26–103 (1982) were considered by the Sixth Circuit in *Southern Bank & Trust Co. v. Folsom,* 75 F. 929 (6th Cir.1896). Folsom & St. John, creditors of Magnatite Iron Company, filed an attachment bill causing an attachment to be levied upon a tract of property which Magnatite had previously conveyed to East Tennessee Mining & Improvement Company. The conveyance from Magnatite to East Tennessee mining was unregistered. Folsom & St. John, however, had actual knowledge of the conveyance. (This knowledge resulted from legal services performed for Magnatite subsequent to the unregistered conveyance.) Southern Bank & Trust Company was a mortgagee of East Tennessee Mining. Southern Bank's mortgage embraced the tract levied upon by Folsom & St. John contemporaneous with their attachment bill. (It is not apparent whether Southern Bank recorded its mortgage.) Focusing on the effect of the actual notice of Folsom & St. John of the unregistered conveyance from Magnatite to East Tennessee Mining, Circuit Judge Lurton wrote:

> We learn from the Tennessee decisions that the registration acts have been several times amended, and the occasion of much litigation. In one particular the various acts have had a uniform construction, and that is that while a purchaser has not been protected against an unregistered conveyance unless he was a bona fide purchaser without notice, a creditor of the grantor is not affected by such unregistered instrument, even though he had notice of its existence.
>
> . . . .
>
> The distinction between the effect of an unregistered conveyance upon a purchaser or creditor affected with notice, which was recognized and maintained under the various registration acts preceding the one now involved, is a distinction preserved most distinctly by section 2890, [Now Tenn.Code Ann. § 66–26–103 (1982) ] . . . . By the very unambiguous language of that section, unregistered instruments are expressly declared to be "null and void as to existing or subsequent creditors, or bona fide purchasers from the maker without notice." "Without notice" qualifies bona fide purchasers, and is not grammatically a qualification of the words preceding.

*Id.* at 933–34.

Finding no evidence of any collusion between Magnatite and Folsom & St. John and accepting the Tennessee Supreme Court's construction of the forerunner of Tenn.Code Ann. § 66–26–103 (1982), the Sixth Circuit determined the conveyance from Magnatite to East Tennessee Mining was null and void vis-a-vis Folsom & St. John, irrespective of actual notice.

■ Assuming *arguendo* the trustee in bankruptcy is charged with notice of the defendant's possession of the premises and thus prohibited from attaining the status of a bona fide purchaser, the trustee still retains the rights of a judicial lien creditor and a creditor with an execution returned unsatisfied. Notice of an unregistered instrument eligible for registration does not impair the rights of a creditor of the maker of the instrument in Tennessee. *Southern Bank & Trust Co. v. Folsom*, 75 F. 929 (6th Cir.1896); *McCoy v. Hight*, 162 Tenn. 507, 39 S.W.2d 271 (1931); *Buchanan v. Kimes*, 61 Tenn. 275 (1872); *Stanley v. Nelson & Dickinson*, 23 Tenn. (4 Hum.) 484 (1844); *Malone v. Brown*, 46 S.W. 1004 (Tenn.Ch. App.1897).

## IV

The instant case is distinguishable from the decision in *Lancaster v. Key* (*In re Easterly*), 24 B.R. 897 (Dist.Ct.E.D.Tenn. 1982).[3] *Easterly* involved a contest between the trustee in bankruptcy and the debtors' vendees who failed to record a warranty deed received from the debtors previous to the commencement of the bankruptcy proceeding. The vendees had paid the purchase price of $67,000.00 for the controverted property, which they occupied as their residence. The trustee in bankruptcy, relying upon his § 544(a) powers, sought to avoid the unregistered warranty deed. The district court, reversing a decision this court felt constrained to make, concluded the unregistered warranty deed was enforceable against the trustee since the debtors had no interest in the property when their bankruptcy case was commenced. The conclusion of the district court was based on the doctrine of resulting trusts, inapposite herein, and its analysis of *Leech v. Hillsman*, 76 Tenn. 747 (1882). *Leech* presented the question of the rights of a creditor of a grantee of a registered deed absolute on its face but intended to be merely a mortgage. The Tennessee Supreme Court observed the registration laws did not control the outcome and that the

rights of the apparent owner could not be enlarged to benefit his creditor at the expense of the true owner. The court affirmed the chancellor's ruling that the right of the mortgagor to the land was superior to that of a purchaser claiming under an execution against the mortgagee. *Leech* is distinguishable from the case before this court because it involved the rights of a creditor of a transferee. The case at hand concerns the rights of creditors of a transferor.

The outcome of the instant controversy is governed by the Tennessee registration laws. Of course, Tenn.Code Ann. § 66–26–103 (1982) is not applicable in registration disputes unless the unregistered document or instrument has been made by the debtor of a creditor seeking to avoid the effect of the unregistered writing. *Hardeman County Savings Bank v. Kennedy* (*In re Climer*), 10 B.R. 872 (W.D.Tenn.1977), aff'd 612 F.2d 580 (6 Cir.1979), *cert. denied* 445 U.S. 964, 100 S.Ct. 1654, 64 L.Ed.2d 240 (1980). However, the debtor George Hurst is, in effect, the maker of the final decree of divorce in question insofar as it pertains to property rights. Further, the decree was approved by his attorney in the divorce proceeding.

It might be argued that the trustee's rights are no greater than those of his debtors in bankruptcy. A nonbankruptcy Tennessee decision merits consideration. *Butler v. Maury*, 29 Tenn. (10 Hum.) 420 (1850), involved an unregistered title bond. Henderson sold some acreage in consideration of cash and his vendee's notes for the balance of the purchase price. Henderson executed his bond for title on payment of the purchase price. The vendee took possession and paid the balance due. A third party creditor of Henderson obtained a judgment on which execution was issued. The land Henderson had sold to the vendee was sold by the sheriff to satisfy the third party creditor's judgment. The court observed that the title bond was null and void against creditors since it was unregistered. The purchaser at the execution sale admittedly had actual knowledge of the unregis-

---

**3.** A notice of appeal to the Sixth Circuit Court of Appeals was filed on November 24, 1982.

tered title bond and the fact that the purchase price had been paid. The plaintiff vendee contended the purchaser's title was subject to his equitable right—

> because the sheriff's sale could transfer no greater right than that which was in the debtor at the time of the sale, and that the debtor was in fact only a trustee for the plaintiff, who was the real owner.

*Id.* at 422.

The *Butler* court rejected the vendee's contention, finding acceptance thereof would defeat the pclicy of the registry act and nullify the explicit provisions thereof.

█ A determination by this court that the defendant's right to occupy the contested premises is paramount to the trustee's rights under § 544(a) would ignore the provisions of Tenn.Code Ann. § 66–26–103 (1982) and numerous decisions interpreting the precursors of that statute. It was incumbent upon the defendant to register the divorce decree to perfect her occupancy interest against creditors of her former husband. Tenn.Code Ann. § 66–26–103 (1982).

> The effect of Sec. 3752 of Shannon's Code (now Tenn.Code Ann. § 66–26–103) is to be settled by the decisions of the Tennessee Supreme Court. Their construction is controlling. The purposes of the statute are obvious, and the penalty imposed for its nonobservance is harsh. Such unrecorded conveyances, at least insofar as they affect the rights of creditors, are void.

*In re Sweat,* Bankruptcy No. 4660 (E.D. Tenn.1930).

█ Although the Tennessee decisions mandate a conclusion by this court that the trustee is entitled to the controverted premises, the trustee's request for judgment for payment of rent while this controversy was in litigation is denied on the basis of equitable considerations.

This Memorandum constitutes findings of fact and conclusions of law; Bankruptcy Rule 752.