In re David A. CRABTREE, Debtor.

Francis W. NORWOOD, Trustee,
Plaintiff,

v.

Brenda CRABTREE, a/k/a Brenda Lou
Brown Crabtree, and David A.
Crabtree, Defendants.

Bankruptcy No. 3–83–01116.
Adv. No. 3–83–0908.

United States Bankruptcy Court,
E.D. Tennessee.

March 19, 1984.

Walker & Walker, P.C. John A. Walker, Jr., Knoxville, Tenn., Cadwalader, Wickersham & Taft, Murray Drabkin, Mark C. Ellenberg, Washington, D.C., for plaintiff.

Samuel J. Zusmann, Jr., Atlanta, Ga., for debtor.

Cecil D. Meek, Jr., Knoxville, Tenn., for defendant Brenda Crabtree.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether an automobile is property of the estate, 11 U.S.C.A. § 541 (1979), or may be brought into the bankruptcy estate pursuant to the trustee's powers of avoidance, 11 U.S.C.A. §§ 544,

547 (1979). The automobile was delivered into the possession of debtor's wife at the time of its purchase, but the debtor retained a certificate of title designating him as the record owner until he conveyed the document to the wife shortly before the commencement of involuntary bankruptcy proceedings against him.

## I

An involuntary chapter 7 case was commenced against the defendant debtor on July 14, 1983. The order for relief was entered August 22, 1983, and an order approving the election of the trustee was entered on September 30, 1983. The trustee commenced this adversary proceeding on November 10, 1983, seeking an order compelling debtor's ex-wife, defendant Brenda Crabtree, to turn over a 1982 Mercedes automobile in her possession.

In February 1982 Brenda Crabtree received a 1980 Mercedes as a birthday present from the debtor. She drove the car and maintained possession of the car and its keys until the car was damaged in an accident in May 1982.

In May 1982 the debtor traveled to Florida to purchase a replacement for the damaged 1980 car.[1] Debtor telephoned his wife from Florida and described the various vehicles which were available. She expressed her preference, and he accordingly bought the car in question, apparently receiving a $24,000.00 trade-in allowance on the 1980 car and paying an additional $6,000.00.[2] Debtor never took possession of the car. Instead, the Florida dealer arranged to have the car driven to Tennessee. Debtor and his wife met the driver and picked up the car. After that time, she drove the car and maintained possession of the car and its only set of keys. Debtor

---

1. Brenda Crabtree testified that the 1980 vehicle was "totaled" in the accident. Nonetheless, the bill of sale for the 1982 vehicle here in dispute indicates that the dealer allowed a $24,000.00 trade-in allowance on the 1980 car toward the $31,000.00 purchase price of the 1982 vehicle. Apparently, some insurance proceeds from the accident were also applied to the purchase of the new car.

2. The bill of sale shows a total cash price of $31,000.00. However, the handwritten terms indicate the $24,000.00 trade-in allowance along with notation, "Pay on dif. $6,000." The apparent $1,000.00 discrepancy was not addressed in the testimony.

drove the car only occasionally, generally only when he and his wife were in the company of another couple.

The bill of sale identifies debtor as the purchaser. The certificate of title issued July 3, 1982, bears debtor's name as the sole registered owner. The application for a certificate of registration made in June 1982 is signed by the debtor as owner; the current certificate of vehicle registration renewal, issued a year later on June 17, 1983, and expiring on April 30, 1984, continues to identify debtor as the registered owner. None of the documents pertaining to the sale, registration, or title of the vehicle designate the wife as owner.

In February 1983 Brenda Crabtree filed for divorce. The parties executed a property settlement agreement in March 1983, providing that the debtor would transfer to Brenda Crabtree, free and clear of liens and encumbrances, "title to a 1982 Mercedes 300 TD station wagon ...." The property settlement agreement was incorporated into a final decree of divorce on May 20, 1983.

After the divorce, realizing that her license plates had expired and aware that she did not have the title certificate, Brenda Crabtree contacted the debtor and inquired about the location of the certificate of title. Debtor eventually located the certificate and delivered it to her on June 17, 1983. As then delivered, the certificate of title bore an assignment of title executed by debtor, without identifying the assignee, and dated April 22, 1983. Brenda Crabtree placed the certificate of title in her lockbox. She never applied for a new certificate of title.

## II

The plaintiff trustee contends first that the debtor owned the car as of the commencement of this case and that it is property of the estate. 11 U.S.C.A. § 541 (1979). Alternatively, the trustee argues that, assuming that debtor effectively transferred title to the wife, the trustee may nevertheless avoid the transfer as one that is invalid against a judicial lien credi-

tor. 11 U.S.C.A. § 544(a) (1979); Tenn. Code Ann. § 55-3-125 (1980); Tenn.Code Ann. §§ 66-24-101, 66-24-104 (1980); Tenn.Code Ann. §§ 66-26-101 to 66-26-103 (1980). Thirdly, the trustee argues that the transfer, even if validly accomplished, is an avoidable preference. 11 U.S.C.A. § 547 (1979).

Both defendants contend that the parties' intention, and not compliance with motor vehicle title and registration laws, determines ownership of an automobile.

■ The 1982 Mercedes station wagon is not property of the estate under 11 U.S. C.A. § 541(a)(1) (1979). Under Tennessee law, the intention of the parties, and not the certificate of title, determines the ownership of the car. *Smith v. Smith*, 650 S.W.2d 54 (Tenn.App.1983). In *Smith* the court held that a father's donative intent and delivery of an automobile established his daughter's ownership of the car despite both registration of the car and issuance of the certificate of title in the father's name. Similarly, in *Hayes v. Hartford Accident & Indemnity Co.*, 57 Tenn.App. 254, 417 S.W.2d 804 (1967), the court held that a buyer became the owner of a truck when he took possession and control of the truck in exchange for cash and another vehicle, even though the certificate of title was not assigned to him until two months later. Concluding that the purpose of the motor vehicle title and registration laws is to prevent trafficking in stolen cars, the court observed:

> [T]here is no provision in such statute which renders a transfer void because of noncompliance with the provisions thereof respecting transfer and delivery of certificate of title .... [I]t does not appear to be the general purpose of the statute ... to set aside the general principles applicable to sales of chattels.

*Hayes*, 417 S.W.2d at 809.

The state sales law provides:

> Insofar as ... matters concerning title become material ... [u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller

completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and ... if the contract requires delivery at destination, title passes on tender there.

Tenn.Code Ann. § 47–2–401 (1979).

■ In the instant case the seller delivered the Mercedes to Brenda Crabtree, who took possession and assumed control of the car, using it from that time forward as her property. As in *Hayes*, she received the car in exchange for valuable consideration in the form of her previous vehicle and insurance proceeds. Title to the car passed from the seller to her at delivery. Thereafter, she retained possession of the car. Accordingly, she was, and remained, the owner.

Furthermore, on June 17, 1983, debtor delivered to Brenda Crabtree the certificate of title bearing an executed assignment of title. Thus, on July 14, 1983, when debtor's involuntary case was commenced, debtor had no legal or equitable interest either in the automobile or in the certificate of title itself. 11 U.S.C.A. § 541(a)(1) (1979); Tenn.Code Ann. § 55–3–118 (Supp.1983).

Nor was there an avoidable preference under 11 U.S.C.A. § 547 (1979). The statute permits the trustee to avoid "any transfer of property of the debtor" exhibiting the five elements of a preference. 11 U.S.C.A. § 547(b) (1979). The threshold inquiry must be whether property of the debtor was transferred. As indicated, title to the car passed to Brenda Crabtree upon delivery of the car into her possession. The car was never property of the debtor.

■ Significantly, the parties' property settlement agreement provided that debtor would transfer "title to," not possession of, the automobile to the wife. The extent of debtor's interest was his interest in the certificate of title. Debtor did not transfer ownership of the car to Brenda Crabtree during the preference period because he had no ownership interest to transfer. At most, debtor transferred the bare document itself on June 17, 1983. In order to constitute an avoidable preference, a transfer must be (1) to or for the benefit of a creditor, (2) for an antecedent debt, (3) while the debtor was insolvent, (4) within 90 days before the petition (or within one year before the petition to an insider with reasonable cause to believe the debtor was insolvent), and (5) enable the creditor to receive more than he would have received under the provisions of the Bankruptcy Code, had the transfer not occurred. 11 U.S.C.A. § 547(b) (1979). Even assuming *arguendo* that the first four elements are present, the fifth element of a preference is lacking in the transfer of the certificate of title. The mere certificate of title, without more, is clearly of negligible value. Thus, the wife would be entitled to request the court to order the trustee to abandon the certificate of title as property of inconsequential value to the estate. 11 U.S.C.A. § 554(b) (1979). Debtor's conveyance of the certificate of title alone did not enable the wife to receive more than she would have otherwise been entitled to under the Bankruptcy Code. The transfer of the certificate of title on June 17, 1983, was not an avoidable preference.

■ The trustee is not entitled to prevail against the wife under 11 U.S.C.A. § 544(a) (1979) by asserting the rights of a judgment lien creditor. Again, the statute speaks in terms of "property of the debtor." Plainly, a judgment lien creditor has no rights against property never owned by the debtor. As established, Brenda Crabtree owned the car from and after the time of its delivery into her possession by the seller. Delivery of the car to her was not a transfer of property of the debtor because the debtor never owned the car.

Furthermore, the trustee's reliance upon this court's holding in *In re Hurst*, 27 B.R. 740 (Bkrtcy.E.D.Tenn.1983), is misplaced. The trustee argues that Brenda Crabtree's failure to record the divorce decree renders a transfer pursuant to the property settlement agreement and divorce decree void under state law applicable to unregistered

instruments. *Hurst* and the Tennessee statutes governing registration of instruments do not, however, mandate such a conclusion. *Hurst* involved the failure of a wife to record a divorce decree granting her the right to occupy a house owned by the debtor husband. This court held that the trustee could avoid the conveyance of the right of occupancy under 11 U.S.C.A. § 544(a) (1979). However, *Hurst* involved the transfer of an interest in real property. This court pointed to the unequivocal statutory language making eligible for registration "all instruments in writing transferring or conveying any right of ... occupancy ...." *Hurst*, 27 B.R. at 743; Tenn. Code Ann. § 66–24–101(14) (1982). Thus, the unregistered divorce decree conveying the wife's right of occupancy in real property was null and void as to a judicial lien creditor. *Hurst*, 27 B.R. at 745; Tenn. Code Ann. §§ 66–26–101,[3] 66–26–103 (1982).[4]

In contrast, the instant case concerns the transfer of personalty. The statute does make eligible certain writings pertaining to the conveyance of personalty by either sale or gift—for example, "agreements ... for the conveyance of ... personal estate" Tenn.Code Ann. § 66–24–101(1) (1982); "all instruments of writing for the absolute conveyance of personal property" Tenn. Code Ann. § 66–24–101(5) (1982); and "deeds of gifts of any estate, real or personal." Tenn.Code Ann. § 66–24–101(7) (1982).

However, in *Tatum v. Jameson*, 21 Tenn. 298 (1841), it was held that a bill of sale pertaining to a sale of cattle did not have to be registered to protect the buyer from levying creditors of the seller where the sale was accomplished by actual delivery of the cattle to the buyer. In *Tatum* creditors of the seller sued out an attachment on the cattle one day after the buyer had purchased and obtained possession of the cattle but several days before the bill of sale was registered. The court observed:

> This is not a contract of sale which the law requires to be evidenced by writing. A verbal sale and delivery ... will vest in the purchaser a good title .... If a party contract for personal property, and the possession remain in the vendor, so that no title passes except by the deed, such deed must be registered, or it is void as to creditors or purchasers without notice.
>
> But where no deed is necessary to pass the title, and consequently no registration necessary, the existence of a deed is of no consequence ....

*Tatum*, 21 Tenn. at 300–301.

Thus, as the sale could be accomplished by delivery of the personalty, without the necessity of a writing, the buyer was not required to register a writing to protect his interest in the goods from the claim of a levying creditor of the seller.

Similarly, a gift of personalty by deed of gift must be registered to be effective against creditors of the donor; however, a gift of personalty by actual delivery of the thing given, valid without a writing, does not require the registration of a writing. *See McEwen v. Troost*, 33 Tenn. 186 (1853); Tenn.Code Ann. § 66–24–101(7) (1982). The evidence of a transaction which is allowed to be done by the mere act of the parties cannot, in the nature of things, be recorded or registered. *Meacham v. Meacham*, 91 Tenn. 532, 19 S.W. 757 (1892).

Even assuming *arguendo* that the 1982 Mercedes was property of the debtor

---

**3.** *Effect of instruments with or without registration.*—All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided.

**4.** *Unregistered instruments void as to creditors and bona fide purchasers.*—Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

which was transferred to the wife, such a transfer was of necessity either a gift or sale by actual delivery to the wife. Either it was a gift outright occurring at the time of purchase or it was an exchange for consideration occurring later pursuant to the property settlement agreement and divorce decree. In either case, the transaction could be accomplished by actual delivery into the wife's possession without the existence of a writing. Thus, no writing was required to be registered.[5]

As this court noted in *Hurst,* "a transferee of the debtor is not required to perform the impossible in order to perfect an interest." *Hurst* 27 B.R. at 743. Since a sale or gift of personalty, with actual delivery to the purchaser or donee, need not be registered under state law in order to be valid against a judicial lien creditor, the trustee is not entitled to prevail against the wife.

The trustee also cites Tenn.Code Ann. § 55–3–125 (1980) as a basis for the assertion of his rights as a judgment lien creditor against the wife. This statute provides:

> *Liens and encumbrances—Filing.* —No conditional sales contract, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession entered into after March 1, 1951, or a lien of the state for taxes established pursuant to chapter 60 of title 67, shall be valid against the creditors of an owner or subsequent purchasers or encumbrancers until the requirements of this section and § 55–3–126 have been complied with, unless such creditor, purchaser, or encumbrancer has actual notice of the prior lien.

Tenn.Code Ann. § 55–3–125 (1980).

As is apparent from the language, the purpose of the statute is to render invalid as to creditors of the owner any nonpossessory lien or encumbrance not noted on the certificate of title in accordance with Tenn. Code Ann. § 55–3–126 (1980). However, Tenn.Code Ann. § 55–3–125 (1980) bears no

relevance to the transfer of a possessory ownership interest in a vehicle.

Similarly, if the June 17, 1983, transfer by the debtor of the certificate of title itself is deemed a transfer of property of the debtor, Tenn.Code Ann. § 55–3–125 (1980) by its terms does not encompass the transfer of the document itself, but only applies expressly to the failure to note non-possessory liens upon the document. Debtor's transfer of the certificate of title itself is not the type of transfer rendered invalid by the statute, and the trustee may not rely upon this statute to prevail against the wife. Furthermore, as previously noted, even if the trustee had superior rights as to the certificate itself, the document, without more, is of inconsequential value to the estate. The wife would be entitled to request the court to order the trustee to abandon the certificate of title. 11 U.S. C.A. § 554(b) (1979).

This Memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.

---

5. Even if considered a sales transaction, the statute of frauds would not be applicable to the extent that the goods were delivered and accepted. Tenn.Code Ann. § 47–2–201(3)(c) (1979).