In re Beverly H. **KELLEY,** Debtor.

**Ann Mostoller, Trustee, Plaintiff,**

v.

**Kendall Joe Kelley, Defendant.**

**Bankruptcy No. 02–33660.**
**Adversary No. 03–3105.**

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 9, 2003.

Charles D. Buckholts, Mostoller, Stulberg & Whitfield, Oak Ridge, TN, for Plaintiff.

John P. Newton, Jr., Knoxville, TN, for Defendant.

## MEMORANDUM

RICHARD S. STAIR, JR., Bankruptcy Judge.

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff on June 19, 2003, seeking authorization to sell real property free and clear of liens under 11 U.S.C.A. § 363(f)(3) (West 1993) and to sell the Defendant's interest in the real property pursuant to 11 U.S.C.A. § 363(h) (West 1993). The Defendant opposes the relief sought, averring that the Plaintiff seeks to sell real property that is not property of the Debtor's bankruptcy estate.

All facts and documents essential to the resolution of this action are before the court on the Stipulations filed by the parties on October 27, 2003. By agreement, all issues will be resolved on the Stipulations and briefs without an evidentiary hearing.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (N), and (O) (West 1993).

### I

The Debtor filed the Voluntary Petition commencing her Chapter 7 bankruptcy case on July 15, 2002. Thereafter, on June 19, 2003, the Plaintiff filed the Complaint initiating this adversary proceeding, seeking court approval to sell real property located at 701 Crestview Drive, Rockwood, Roane County, Tennessee, more specifically described as follows:

Located in the Fifth (5) Civil District of Roane County, Tennessee, being known and designated as Lot 5. Block "E",

Highland Forest Addition,[1] as shown by map of same of record in Map Book 3, Pages 152 & 153, Roane County Register Office.

(the Real Property). The Plaintiff seeks to sell the Real Property free and clear of all liens and of any interest held by the Defendant.[2] On August 26, 2003, the Defendant filed an Answer, stating that the Real Property is not property of the Debtor's bankruptcy estate, and thus, the Plaintiff does not have any right to sell it.

Pursuant to the Order entered on October 15, 2003, the issues before the court are (1) whether the Debtor's bankruptcy estate has an interest as a co-owner in the Real Property; and (2) if so, whether the Plaintiff is entitled to sell the Debtor's and the Defendant's interests in the Real Property under § 363(h).

## II

The Debtor and the Defendant were divorced on June 8, 2000, under the terms of a Final Decree of Divorce (the Final Decree) entered in the General Sessions Court for Roane County, Tennessee. *See* Stip. Ex. B. The Final Decree orders that "the marital dissolution agreement entered into by the parties is hereby incorporated by reference into this Final Decree." Stip. Ex. B. The Marital Dissolution Agreement was executed by the parties on May 22, 2000, and provides, in material part:

14. REAL PROPERTY: Parties owns [sic] real property located at 701 Crest-

view Drive, Rockwood, TN 37854. Husband is awarded all right, title and interest in the property located at 701 Crestview Drive, Rockwood, TN 37854, assuming all indebtedness associated therewith and forever holding Wife harmless therefrom. Wife shall execute a Quit Claim and any other documents to effectuate this transfer.

Stip. Ex. A. The Final Decree was not appealed by either party and is a final order.[3]

The Debtor did not execute and/or record a quit claim deed to the Defendant conveying her one-half interest in the Real Property, nor was the Final Decree recorded with the Register of Deeds for Roane County, Tennessee.

The Trustee argues that because the Debtor did not execute a quit claim deed transferring her interest in the Real Property, and because neither party recorded the Final Decree with the Register of Deeds for Roane County, Tennessee, the Debtor still owned her one-half interest in the Real Property at the time her bankruptcy case was commenced. Alternatively, the Trustee avers that any interest the Defendant may arguably have acquired in the Real Property under the Final Decree is subject to avoidance by her under § 544 of the Bankruptcy Code.

The Debtor's bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1)

---

1. The Stipulations filed by the parties refers to "Highlight" Forest Addition. The court takes judicial notice, however, that the Trustee's Complaint filed June 19, 2003, the scheduling Order entered on October 15, 2003, and the Deed of Trust appended to the Proof of Claim filed by SunTrust Mortgage, Inc. on August 21, 2003, all refer to the Real Property as being located in the Highland Forest Addition. The court believes the Stipulations to contain a typographical error.

2. The Real Property is encumbered with the lien of SunTrust Bank. The parties did not stipulate the amount of SunTrust Bank's claim.

3. All references in this Memorandum to the Final Decree include the Marital Dissolution Agreement, incorporated therein.

(West 1993). Additionally, the Debtor is required to turnover all property of the estate to the Trustee pursuant to 11 U.S.C.A. § 542 (West 1993). The Trustee, who became the representative of the bankruptcy estate, succeeded to all of the Debtor's interests in property of the estate and inherited the responsibility to use estate property in the best interests of creditors, including the sale thereof. *See* 11 U.S.C.A. § 323(a) (West 1993); 11 U.S.C.A. § 704(1) (West 1993).

■■■ To accomplish her duties, the Trustee has been granted several powers by the Bankruptcy Code, including those found in § 544, also known as the "strong-arm provision," which provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C.A. § 544(a) (West 1993 & Supp. 2003). In summary, "[t]he status which [§ 544(a)] confers upon the trustee in bankruptcy is that of 'the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings.'" *Lancaster v. Hurst (In re Hurst)*, 27 B.R. 740, 742 (Bankr.E.D.Tenn. 1983) (quoting *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D.Miss.1932)). The actual rights and powers acquired by the trustee, although vested through federal bankruptcy law, are determined under applicable state law, which in this case is Tennessee law. *See Waldschmidt v. Dennis (In re Muller)*, 185 B.R. 552, 554 (Bankr.M.D.Tenn.1995).

■■■ An analysis of several Tennessee statutes provides the answer to the first question of whether the Debtor's bankruptcy estate has an interest as co-owner in the Real Property in the affirmative. As an initial matter, the Roane County General Sessions Court had the authority to divest and vest title by decree, rather than by order that the Debtor convey the Real Property by quit claim deed, and that decree would be entitled the same force and effect as a conveyance by quit claim deed. *See* TENN. CODE ANN. § 16–1–108 (1994); § 16–1–109 (1994); § 36–4–121(3) (West 2001 & Supp.2003) ("[In all actions for divorce or legal separation], the court shall be empowered to effectuate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the

parties."). Although it can be argued that the Final Decree divests the Debtor's interest in the Real Property and vests it in the Defendant, the Final Decree only provides that the Defendant was "awarded" the Real Property but that the conveyance was to be accomplished by quit claim deed from the Debtor to the Defendant.[4]

Section 66–24–101 sets forth the writings eligible for recording in Tennessee, and it includes the following:

(1) All agreements and bonds for the conveyance of real or personal estate;

. . . .

(4) All deeds for absolute conveyance of any lands, tenements or hereditaments, or any estate therein;

. . . .

(10) All marriage settlements, contracts, or agreements;

. . . .

(14) All instruments in writing transferring or conveying any right of improvement, occupancy or preemption;

. . . .

(17) Memoranda of judgments, attachments, orders, injunctions, and other writs affecting title, use or possession of real estate;

. . . .

(18) Certified copies of decrees divesting the title of land out of one person and vesting it in another; [and]

. . . .

(26)(A) Any instrument that provides for any party to agree to take any action regarding any interest in real property, or not to take such action regarding any interest in real property, including, but not limited to, any agreement to or negative agreement to mortgage, pledge, assign, hypothecate, alienate, subdivide, encumber, sell, transfer, or otherwise affect the real property or any part thereof.

TENN. CODE ANN. § 66–24–101 (1993 & Supp.2003). Clearly, the Final Decree was eligible for recording with the Roane County Register of Deeds.

 Section 66–26–101 concerns the effect of instruments with or without registration and states as follows:

All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided.

TENN. CODE ANN. § 66–26–101 (1993). Finally, section 66–26–103, entitled Unregistered instruments void as to creditors and bona fide purchasers, provides that:

Any of such instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

TENN. CODE ANN. § 66–26–103 (1993). Under Tennessee law, "an unregistered decree [is] not the equivalent of a registered deed, and [is] therefore ineffectual as

---

**4.** Whether this "awarded" language is in and of itself sufficient to divest the Debtor's interest in the Real Property and vest it in the Defendant is problematic. If it does not, the § 544(a) analysis is unnecessary because, in the absence of a quit claim deed or other instrument of conveyance, the Debtor and Defendant become owners of the Real Property as tenants in common at the time of their divorce. The court will, however, make the § 544(a) analysis under the assumption that the language of the Final Decree was sufficient to divest title or otherwise impress a cloud upon the Debtor's interest in the Real Property.

against creditors." *White v. O'Bryan,* 148 Tenn. 18, 251 S.W. 785, 792 (1923). So, even though an unrecorded deed is effective between the parties thereto, it is not effective as to third parties without notice. *Newton v. Herskowitz (In re Gatlinburg Motel Enters., Ltd.),* 119 B.R. 955, 964 (Bankr.E.D.Tenn.1990). With regards to divorce actions, "a divorce decree must be registered to be effective as a conveyance of real property against creditors and bona fide purchasers of the property." *Edmondson v. Frasier (In re Frasier),* 47 B.R. 864, 865 (Bankr.M.D.Tenn.1985).

Based upon these statutes, case law, and the provisions of § 544(a)(1), the rights of the Chapter 7 Trustee defeat the rights of the Defendant, the holder of an unrecorded divorce decree, as to the Real Property, *see, Frasier,* 47 B.R. at 866; *Hurst,* 27 B.R. at 746. The Trustee therefore retains the Debtor's one-half interest in the Real Property.[5]

### III

Because the Trustee retains the Debtor's interest in the Real Property, the next question is whether the Plaintiff is entitled to sell the Debtor's and the Defendant's interest under § 363(h).

■ Section 363 of the Bankruptcy Code provides the Trustee with the power to sell property of the estate. Here, the Trustee seeks authority to sell the Real Property free and clear of all liens pursuant to 11 U.S.C.A. § § 363(f) and (h), which state, in material part:

(f) The trustee may sell property ... free and clear of any interest in such property of an entity other than the estate, only if—

. . . .

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property[.]

. . . .

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C.A. § § 363(f), (h). Each of the requirements of subsection (h) must be satisfied, and the Trustee bears the burden of proof as to their satisfaction. *See, e.g., Gonzales v. Beery (In re Beery),* 295 B.R. 385, 396 (Bankr.D.N.M.2003); *Grant v. McDow (In re McDow),* 248 B.R. 466, 468 (Bankr.M.D.Fla.2000); *Gazes v. Ro-*

---

**5.** Likewise, by analogy, when a quit claim deed has not been recorded, a Chapter 7 Trustee, as a judicial lien creditor, obtains superior rights in the property. Here, the parties have stipulated that the Debtor did not execute a quit claim deed transferring the Real Property to the Defendant, and accordingly, the only document at issue is the Final Decree.

*swick (In re Roswick),* 231 B.R. 843, 858 (Bankr.S.D.N.Y.1999).

■ The Trustee contends that she should be allowed to sell both the interests of the bankruptcy estate and the Defendant in the Real Property. She first points out that because the Real Property is a residence, partition is impracticable, and a sale of the estate's undivided inter- est would realize significantly less than would a sale of the Real Property as a whole. Next, the Trustee argues that the estate would receive a benefit because a sale would result in sufficient funds to satisfy SunTrust Bank's lien against the Real Property in addition to a probability that it would result in assets to be paid to unsecured creditors. Finally, the Real Property is not used in the production, transportation or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

■ Although the Trustee does not evidence how partition is impracticable, nor does she offer evidence as to the value of the undivided one-half interest as opposed to the value of the entire home, the court recognizes that "[w]here property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds." *Bakst v. Griffin (In re Griffin),* 123 B.R. 933, 935 (Bankr.S.D.Fla.1991). Based upon the following statute defining partition, the court agrees that partition would not be practicable in this case:

> In making partition, the commissioners shall divide the premises and allot the several shares to the respective parties, quality and quantity relatively considered, according to the respective rights and interests of the parties as adjudged by the court, designating the several shares by posts, stones, marked trees, or other permanent monuments; and they may employ a surveyor, with the

necessary assistants, to aid therein. The partition may be made by tracts, or by the division of each tract into shares, as may seem right to the commissioners and the court.

TENN. CODE ANN. § 29–27–116 (2001). Likewise, the court acknowledges the following reasoning set forth by the *Griffin* court regarding the sale of an undivided interest in a residential home:

> This Court takes judicial notice that a sale of the estate's undivided one-half interest would realize substantially less than a sale of the property free of the interest of the co-owner. The co-owner's undivided one-half ownership interest chills any prospective purchase of the estate's interest since she currently resides on the property and could prevent any sale of the property indefinitely.

*Griffin,* 123 B.R. at 935–36. The court agrees that even though the Trustee has not presented a great deal of evidence to support her argument, clearly, she would realize a higher sale price for the entire Real Property than she would for the sale of an undivided one-half interest therein. Additionally, because the Real Property is residential, the court can take judicial notice that the fourth requirement has been satisfied, in that the property is not used for the production, transportation, distribution, or sale of gas or electric energy.

The parties have stipulated that although the Real Property is subject to a lien of SunTrust Bank, a sale would produce sufficient funds to satisfy SunTrust's lien and should produce assets for the benefit of the Debtor's bankruptcy estate. Even though the Trustee has offered no additional proof to evidence that the benefit to the estate of selling the Real Property outweighs any detriment to the Defendant, the court recognizes that the Trustee has shown that the estate will receive

some benefit by having the mortgage paid in its entirety. *See, e.g., Sapir v. Sartorius*, 230 B.R. 650, 656 (S.D.N.Y.1999); *Roswick*, 231 B.R. at 860. Additionally, the court takes judicial notice that the Debtor valued the Real Property at $65,000.00 in her Schedule A, and SunTrust filed a proof of claim on August 21, 2002 in the amount of $42,641.48. Even though the valuation listed in the Debtor's Schedule A is not credible evidence of the Real Property's value, it does suggest the likelihood that the Real Property has substantial equity that would result in the payment of some dividend to unsecured creditors, which undoubtedly would constitute a benefit to the estate, especially when the property is the sole asset of the bankruptcy estate.[6] *See, e.g., Roswick*, 231 B.R. at 860; *Price v. Harris (In re Harris)*, 155 B.R. 948, 950–51 (Bankr.E.D.Va.1993); *Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803, 807 (Bankr.D.Mass.1987).

 The Trustee bears the burden of showing that the estate will benefit from the sale of the property, and once that burden is met, it shifts to the Defendant to prove that he will suffer a greater detriment that outweighs any benefit. *Roswick*, 231 B.R. at 847. Once the burden shifts, the non-debtor co-owner may offer evidence allowing the court to consider both economic and non-economic factors to determine detriment. *In re Bell*, 80 B.R. 104, 106 (M.D.Tenn.1987); *Roswick*, 231 B.R. at 860–62.

Although the Trustee's proof is meager, at best, she has at least established, through the parties' Stipulations, that the bankruptcy estate will receive a benefit in that the SunTrust mortgage will be paid in its entirety from the proceeds of a sale of the Real Property. Additionally, there is the probability that the Trustee will realize a greater amount, and other creditors will receive some distribution. Furthermore, the Defendant does have some statutory safeguards, such as right of first refusal and his one-half interest in the proceeds, as follows:

(i) Before the consummation of a sale of property to which subsection ... (h) of this section applies, ... a co-owner of such property ... may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection ... (h) of this section applies, the trustee shall distribute to the ... co-owners of such property, ... and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such ... co-owners, and of the estate.

11 U.S.C.A. § 363(i), (j) (West 1993).

 Once the Trustee established that the bankruptcy estate would realize any sort of benefit, the burden shifted to the Defendant to produce evidence that he would suffer a detriment. *See Sapir*, 230 B.R. at 656. However, the Defendant offered no proof, other than his statement that the Real Property is his residence, and if he must move, he will recognize no benefit from the sale after being forced to realize the costs of moving. "[W]here economic and non-economic factors are used in calculating detriment ..., it [is] incumbent upon the Defendant[ ] to come forward with evidence of the detriment, if any, ... from the sale of the home." *Sapir*, 230 B.R. at 657; *see also Harris*, 155 B.R. at 951 (without specific evidence, the court can only analyze possible detriment,

---

**6.** According to the Debtor's schedules, the unsecured priority claims total $1,400.00 and the unsecured nonpriority claims total $18,168.88, for total unsecured claims of $19,568.88.

which is not sufficient to outweigh benefit to the estate).

### IV

■ In summary, the court finds that the Debtor's bankruptcy estate possesses an undivided one-half interest in the Real Property located at 701 Crestview Drive, Rockwood, Tennessee. Additionally, the court finds that the Trustee shall be allowed to sell the Real Property pursuant to 11 U.S.C.A. § 363(h), subject to the following minimum requirements: (1) the Trustee must present to the court within ninety (90) days a contract for the sale of the Real Property, subject to court approval after notice and a hearing; and (2) the contract must be for an amount sufficient to fully satisfy the SunTrust Bank mortgage, pay all expenses of the sale, including realtor and appraiser fees, and provide funds from the Debtor's one-half (½) interest sufficient to pay more than a token dividend to unsecured creditors.

A judgment consistent with this Memorandum will be entered.

### JUDGMENT

For the reasons set forth in the Memorandum filed this date containing findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure, it is ORDERED, ADJUDGED, and DECREED as follows:

1. The bankruptcy estate of the Debtor, Beverly H. Kelley, is the joint owner as a tenant in common with the Defendant Kendall Joe Kelley of a one-half (½) interest in the real property known as 701 Crestview Drive, Rockwood, Tennessee, and more specifically described as follows:

Located in the Fifth (5) Civil District of Roane County, Tennessee, being known and designated as Lot 5, Block "E", Highland Forest Addition, as shown by map of same of record in Map Book 3, Pages 152 & 153, Roane County Register Office.

2. The Plaintiff is, pursuant to 11 U.S.C.A. § 363(h) (West 1993), authorized to sell both the estate's interest and the interest of the Defendant in the 701 Crestview Drive, Rockwood, Tennessee real property, as more specifically described in paragraph one of this Judgment, subject to approval by the court on the following conditions:

A. The Plaintiff must present to the court within ninety (90) days a contract for the sale of the property subject to approval by the court after notice and a hearing.

B. The sale price for the property must be sufficient to fully satisfy the lien of SunTrust Bank, to pay all expenses of sale, including realtor and appraiser fees, and to provide funds from the estate's interest to pay more than a nominal dividend to unsecured creditors.